### THOMAS ARMSTRONG AND OTHERS, PLAINTIFFS IN ERROR, v. THE TREASURER OF ATHENS COUNTY, DEFENDANT IN ERROR.

An act was passed by the legislature in 1840, by which certain lands held under conveyances from the President and Trustees of the Ohio University, at Athens, were directed to be assessed and taxed for county and state purposes. A bill was filed by the purchasers of the land against the tax collector, praying that he should be perpetually enjoined from enforcing the payment of the taxes, because the lands had been exempted by a statute of Ohio, of 1804; which the bill alleged entered into the conditions of sale, under which the complainants held the land. It was insisted that the act of 1840 violates the contract with the purchasers, and is void, being contrary to the clause of the Constitution of the United States which prohibits the states from passing any law violating the obligation of contracts. The Supreme Court of Ohio dismissed the bill of the complainants. The ordinance of 1787, by which a large section of country in Ohio was sold to a company, gave two complete townships of land for the purposes of a university. In 1804, an act of the legislature of Ohio established the university on the foundation of the fund granted by Congress, and vested the land in the corporation of the university. The act directed the manner in which the land was to be leased, reserving rent to the corporation; and the seventeenth section directed that the land appropriated and vested by the act, should be exempted from all state taxes. In 1826, the legislature authorized all the university land not encumbered with leases, or which had not been re-entered by the trustees of the university, or to which they had regained their title, to be sold in fee simple for the benefit of the university. The complainants purchased the land held by them under this statute, and took deeds in fee; no exemption from taxes being contained in the statute, or in their deeds. Held, that the lands having been purchased under the act of 1826, and not being held under the act of 1804, were subject to taxation. All the purchasers held under the act of 1826, and cannot go behind it; and their lands are subject like other persons' to be taxed by the state.

The case of The State of New Jersey v. Wilson, 7 Cranch, 164, cited and affirmed. In that case the land had for a sufficient consideration been given by the state to a certain Indian tribe, and was declared to be forever exempt from taxes. The Indians, with the consent of the state, sold the land; and the purchaser of the Indian title obtained the land, with the exemption from taxes granted by the state.

In order to give this Court jurisdiction under the twenty-fifth section of the judiciary act of 1784, which authorizes the removal of a case by writ of error or appeal from the highest Court of a state to the Supreme Court of the United States, in certain cases, it must appear on the record itself to be one of cases enumerated in that section, and nothing out of the record certified to this Court can be taken into consideration. This must be shown:

First, Either by express averment, or by necessary intendment, in the pleadings in the case; or:

Secondly, By the directions given by the Court, and stated in the exceptions; or:

Thirdly, When the proceedings are according to the law of Louisiana, by the statement of facts, and of the decision, as is usually made in such cases by the Court; or:

Fourthly, It must be entered on the record of the proceedings of the appellate Court, in cases where the record shows that such a point may have arisen and been decided, that it was in fact raised and decided; and this entry must appear to have been made by order of the Court, or by the presiding judge by order of the Court, and certified by the clerk as part of the record in the State Court; or:

Fifthly, In proceedings in equity, it may be stated in the body of the final decree of the State Court, from which the appeal is taken to this Court; or:

Sixthly, It must appear from the record, that the question was necessarily involved in the decision, and that the State Court could not have given the judgment or decree which they passed, without deciding it.

IN error to the Supreme Court of the state of Ohio.

A bill was filed in the Court of Common Pleas of the county of Athens, in the state of Ohio, by Thomas Armstrong and others, stating that they were seised in fee of certain lands purchased by them from the President and Trustees of the Ohio University, in pursuance of the provisions of an act of the Assembly of the state of Ohio, entitled "An act authorizing the Trustees of the Ohio University, to dispose of certain lands," passed February 4th, 1826. The lands are situated within the two townships granted by Congress within the bounds of the Ohio Company's purchase, for the endowment of a university. By the seventeenth section of the act of the Assembly of Ohio, passed February, 1804, entitled, "An act establishing a University in the town of Athens," it is declared "that the lands in the two townships aforesaid, with the buildings which are or may be erected thereon, shall be forever exempt from all state taxes." The bill asserted that the lands were purchased from the president and trustees of the university, in the full faith and confidence that the same would remain forever and exempt from all taxes for state purposes.

The bill further represents that notwithstanding the declaration contained in the act of February 18th, 1804, in pursuance of the provisions of an act of the Assembly of Ohio, passed on the 21st of March, 1840, entitled "An act to amend an act authorizing the trustees of the Ohio University to dispose of certain lands, passed February 4th, 1826," the several tracts of land belonging to the complainants have been appraised by the assessor of Athens county, and placed on the duplicate for taxation by the auditor of the county, and taxes for state and county purposes have been assessed on the said lands. The tax duplicates have been placed

in the hands of a collector, and they have been called upon to pay the same.

The bill prays for an answer, and for a perpetual injunction from further proceedings to collect the said taxes; and for further and other relief.

By the ordinance of Congress, of 1787, under which a large body of land was sold to a company, two townships of land were reserved for the purposes of a university; and in 1804, the legislature of Ohio established a university at Athens, appropriating to it these two townships of land. By this act the land was to be leased out for ninety-nine years, the rents to be paid to the university; and the land was declared to be exempted from all state taxes. In 1826, the legislature of Ohio authorized all the land belonging to the university to be sold in fee simple; and nothing was stated in this act exempting the land to be sold from taxes. The appellants purchased the land from the university, sold under the authority of this law.

The treasurer of Athens county appeared and answered the bill, and admitted all the facts stated in it, and also that he intended to collect the taxes assessed on the land; asserting that he had a right to do so by virtue of an act of the General Assembly of Ohio, passed 21st March, 1840, in connection with other general laws of Ohio defining the duties of treasurer; which said act, and other further acts, he set up as a defence to the complainant's bill.

At the October term of the Court of Common Pleas, the injunction which had been granted on the filing of this bill, was made perpetual.

The defendant appealed to the Supreme Court, and the decree of the Court of Common Pleas was, at the December term, 1840, reversed; and the complainants were adjudged to pay costs.

In the record of the proceedings of the Supreme Court of Ohio, was the following certificate:

"I do hereby certify, that in the above-named case there was drawn in question the validity of the statute of the state of Ohio, passed on the 21st day of March, 1840, entitled 'An act to amend the act, authorizing the trustees of the Ohio University to dispose of certain lands, passed July 4, 1826,' on the ground that it was repugnant to the Constitution of the United States, and

[Armstrong et al. *v.* The Treasurer of Athens County.]

that the decision of the Court was in favour of the validity of said statute.                                        EBEN. LANE,

                    Chief Judge of the Supreme Court of Ohio."

From the decree of the Supreme Court of Ohio, the complainant's appealed to the Supreme Court of the United States.

The case was submitted to the Court, on a printed argument, by Mr. Ewing, for the appellants. No counsel appeared for the appellees.

Mr. Ewing, in the printed argument, stated that, the act of the 18th of February, 1804, expressly declares that these lands "shall forever be exempted from state taxes." This exemption is not limited to the duration of the particular tenure by which they were at first held, but the exemption was of the land and the improvements upon it forever. The act of February 4th, 1826, authorizing the sale, does not directly or indirectly withdraw that exemption, or declare that it shall not attach to the land after sale. It was exempt forever, when it was offered for sale ; and passed with this exemption into the hands of the purchaser. It was his, charged with the burdens and favoured with the privileges which attached to it, under the several laws and parts of laws then in force respecting it ; and those laws formed part and parcel of his contract. The law of 1840, subsequently passed, changing those laws to his injury, was a violation of his contract, contrary to the Constitution of the United States, and therefore void.

The case of the state of New Jersey *v.* Wilson, 7 Cranch, 164, is in point. There is nothing to distinguish the two cases from each other.

Mr. Justice CATRON delivered the opinion of the Court.

This is a writ of error from a State Court ; and it has become the duty of this Court, before proceeding to examine the merits of the controversy, to determine whether jurisdiction over it is conferred by the twenty-fifth section of the judiciary act of 1789 It is true no question upon that subject was raised in the argument presented for the appellant ; (the respondent having no counsel ;) but it has been the uniform practice of this Court, in every case of this description, to ascertain, in the first instance,

whether the record presented a case in which we were author-ized by law to revise the judgment or decree of a State Court. And this question has so often arisen, and parties have been so frequently subjected to unnecessary expense in bringing causes here, in which a writ of error or appeal to this Court would not lie, that we have thought this a fit occasion to state the princi-ples upon which the Court have constantly acted, and which may now be regarded as the law of the Court.

In order to give this Court jurisdiction under the twenty-fifth section of the act of 1789, it must appear on the record itself, to be one of the cases enumerated in that section: and nothing out of the record certified to this Court can be taken into con-sideration.

This must be shown: first, either by express averment, or by necessary intendment in the pleadings in the case.

Or, secondly, by the direction given by the Court, and stated in the exception.

Or, thirdly, when the proceeding is according to the law of Louisiana, by the statement of facts, and of the decision, as usu-ally made in such cases by the Court.

Or, fourthly, it must be entered on the record of the proceed-ings in the Appellate Court, in cases where the record shows that such a point may have arisen and been decided, that it was in fact raised and decided; and this entry must appear to have been made by the order of the Court, or by the presiding judge by or-der of the Court, and certified by the clerk, as a part of the record in the State Court.

Or, fifthly, in proceedings in equity, it may be stated in the body of the final decree of the State Court from which the appeal is taken to this Court.

Or, sixthly, it must appear from the record that the question was necessarily involved in the decision; and that the State Court could not have given the judgment or decree, which they passed, without deciding it.

We are not aware of any other modes in which the judgment or decree of a State Court can lawfully be brought before us; and we have stated them particularly, in order to prevent, in future, the difficulties and discrepancies which have so often arisen on this subject.

In the case now before us, the presiding judge of the Supreme Court of Ohio has certified on the record that the validity of a statute of the state was drawn in question, on the ground that it was repugnant to the Constitution of the United States, and that the decision was in favour of the validity of said statute; and this certificate of the judge is certified by the clerk, as a part of the record. We presume that the certificate of the presiding judge was made by the authority of the Court: and as this bill and answer show that such a point might have arisen, and this certificate on the record states that it did arise, and was decided; the case comes within the fourth clause above mentioned, and this Court must take jurisdiction, and examine whether the point so certified was rightfully decided.

An act of the legislature of Ohio, passed in 1840, ordered certain lands held by the complainants to be assessed and taxed. The defendant was the tax-collector. The bill prays he be perpetually enjoined from enforcing the payment of the tax, because the lands had been exempted by a statute of Ohio, of 1804, which entered into the conditions of sale under which the complainants held. Therefore, it is insisted, the act of 1840 violates the contract of purchase, and is void; being contrary to that clause of the Constitution of the United States, which prohibits the states from passing any law violating the obligation of contracts.

This is the only question presented by the record that we can examine; as the twenty-fifth section carefully restricts this Court to specified cases of jurisdiction, beyond which we have no power to go into the cause.

There are six complainants, each setting up a distinct title; they sue jointly—and for the six only, and not for themselves and others, equally assessed; as in Attorney-General *v.* Helin, 2 Simon and Stuart, 67; and similar cases, referred to in Story's Equity Pleadings, sec. 114, 123. The Supreme Court of Ohio having entertained jurisdiction, this Court must do so likewise. The question of misjoinder is not open to us for revision.

The immediate deeds in fee from the trustees of the Ohio University to complainants, are not set forth in the pleadings: we take it, however, that they contain no condition exempting the lands from taxation, as the bill is founded on the assumption that the seventeenth section of the act of 1804 entered into the

contract and imposed the exemption on the state. Whether such an inference arises in favour of the complainants, depends on the construction of an ordinance of Congress and the several acts of the legislature of Ohio, passed in regard to these university lands.

By the ordinance of 1787, 1 L. U. S. 573, a sale of a large section of country was authorized to be made to a company of individuals, from which is reserved:

"Not more than two complete townships to be given perpetually; for the purposes of a university, to be laid off by the purchasers as near the centre as may be, so that the same shall be of good land; to be applied to the intended object by the legislature of the state."

Ohio came into the Union as a state, in 1802. In 1804, Ohio Land Laws, 226, an act was passed establishing a university on the foundation of the fund secured by Congress, to be situated on the reserved lands; being townships eight and nine. The lands were vested in the corporation, consisting of the president and trustees, "for the sole use, benefit, and support of the university, forever."

They were authorized to rent out the lands in separate tracts, of not less than eighty acres, or more than two hundred and forty acres on a valuation of commissioners, at a yearly rent of six per centum per annum on the estimated value, for ninety years, renewable forever: and from time to time a re-valuation was to take place, to which the subsequent rents were to correspond; with this addition, sec. 12, "That the said corporation shall have power to demand a further yearly rent on said lands, and tenements, not exceeding the amount of tax imposed on property of like description, by the state; which rents shall be paid at such time and place, to such person, and collected in such manner, as the corporation shall direct." The seventeenth section declares, "That the lands in the two townships, appropriated and vested as aforesaid, with the buildings which are or may be erected thereon, shall forever be exempted from all state taxes."

Thus the matter stood until 1826, when the legislature authorized the board of trustees of the university to sell and convey in fee simple, (1) all the lands situate in the college townships, which were not encumbered with outstanding leases; (2) such of said lands as had been re-entered by the board, for a breach

of the conditions of the leases, or where this encumbrance had been or might be otherwise removed; (3) to convey in fee to the lessees, respectively, on the payment of such sum of money as would yield at an interest of six per centum per annum on the sum which was yearly reserved in the lease.

Pursuant to this statute, the complainants purchased and took deeds in fee; no exemption from state taxation being contained in the statute under which they took title, or in their deeds.

The object of the incorporating act of 1804, was to regulate a public fund, intrusted to the management of the state sovereignty, so as best to accomplish the intention of the donor, the United States. It was a matter of course, in the then state of the college fund, to exempt it from taxes, in the hands of the trustees. The lands brought no income, and could bear no tax in their unculti-vated condition, until they passed into the hands of private indi-viduals. The tenants of the university for ninety years made their own contracts, and were bound to pay the ordinary taxes levied on the inhabitants of Ohio, not into the state treasury but into that of the university. Every change in the general laws in regard to the revenue bound them: as the value of real estate increased, and taxes were imposed in addition to previous bur-dens, to such an extent the corporation of the university added to the rate of its tenants. The lands not leased continued ex-empt from taxation, on the fair supposition that they brought no income, and could bear no burdens.

The policy of the act of 1804 is too plain to admit of com-ment; and its wisdom so manifest as to meet with instant sanction.

But what was the policy of the act of 1826? An entire change of the fund from real estate to a capital in money vested by loan in the state treasury, was determined on by the corpora-tion. Leave was asked and granted by the legislature to sell the lands, and convey them in fee simple to purchasers; giving the tenants a preference in cases where there were existing leases. As regarded the management and nature of the fund to sustain the university, the act of 1804 was to a great extent repealed; by that act, the lessees of the corporation were governed; their contracts were founded on it; but with it the purchasers in fee had no concern, their contracts originated in a different policy,

and are sanctioned by a different statute; the complainants actually claim, and could only claim by force of the act of 1826. This act secured the payments of no taxes to the university, as the substitute of the state. It simply authorized the corporation to sell as an individual might sell, and the respective purchasers took title as from an individual; they were strangers to the act of 1804, with the exception of those provided for by the third section of the act of 1826, the value of whose lands were to be governed by the assessment of their rents under the former act, and who were entitled to have deeds in fee on the payment of one hundred dollars for every six dollars of annual rent assessed upon them, disregarding the taxes they were bound by the act of 1804 to pay to the corporation. The mode of ascertaining the value makes no difference; all the purchasers hold under the act of 1826, and cannot go behind it; and are subject like other persons holding lands in fee to be taxed by the state.

The case relied on by the complainants as ruling this is that of the State of New Jersey v. Wilson, 7 Cranch, 164. In 1758, the Delaware tribe of Indians agreed with the colonial government of New Jersey, to release to the latter all their lands in that colony south of the river Raritan: the government purchased a tract of land on which the Indians might reside, and stipulated by a legislative act, that this tract should not thereafter be subject to any tax. The Delawares wished to emigrate, and join the Stockbridge tribe in New York. In 1801, the state of New Jersey, by a statute, authorized them to sell their lands. This act of Assembly contained no exemption from the payment of taxes after the sale. In 1803, the Indian tribe sold to Wilson and others; and the commissioners appointed by order of the legislature conveyed for and on behalf of the Indians, to the purchasers. On the foregoing state of facts, it was held by this Court, that the purchasers being in under the first grant of 1758, to the Indian tribe, were equally entitled to its benefits; and that no taxes could be levied on the land.

The soundness of the decision we think undoubted. The compact with the Delaware tribe was for a cession to the government of a large body of land; the consideration for the cession, was a smaller tract vested in trust for them in fee; and a further, and very material consideration was, that the latter tract should never

be taxed by the government. The parties were competent thus to contract, as no restriction was imposed on the colonial government, and the consideration was ample for the exemption.

The condition attached to the land; so this Court held: " The act authorizing the Indians to sell was a mere enabling statute; the purchasers took from and under the Indian tribe, held by virtue of the grant to them, and were, of course, entitled to all the benefits of the contract. New Jersey had therefore no more power to repeal that part of the grant which exempted the lands from taxation than she had to repeal the entire contract: and therefore her act of 1804, repealing the clause of exemptions, was void."

We think the case in Cranch compared with the one presented by the record, is too dissimilar to require a particular comparison, or further comment.

We concur with the Supreme Court of Ohio, that the bill must be dismissed: and so order.