73 U.S. 124
 18 L.Ed. 853
 6 Wall. 124
 WALKER
v.
VILLAVASO.
 December Term, 1867
 
 ERROR to the Supreme Court of Louisiana.
 This was a motion by Mr. Janin to dismiss the writ of error. The suit,—a suit instituted by Villavaso against Walker, in the District Court of the parish of St. Bernard, Louisiana,—was one of the ordinary sort for foreclosure and sale under a mortgage according to the practice prevailing in Louisiana. Between the 25th January and the 17th August, 1861, Louisiana had passed an 'ordinance of secession' from the Union, adopted the constitution of the Rebel States, required all office-holders to swear allegiance to it, and had been proclaimed in a state of insurrection by the President of the United States. During this term, to wit, on the 18th October, 1861, an order of sale of the mortgaged premises was made. It was made by the same judges who had sat before the secession; and who remained in office apparently until May, 1865, when loyal judges were appointed under act of Congress. The Supreme Court of the State having, in 1867, affirmed the decree of foreclosure made in the parish court, the affirmance was brought here as within the 25th section of the Judiciary Act, which declares that where a controversy in a State court draws in question an authority exercised under the United States, and the decision is against its validity, the matter may be reviewed here; but declares also that no other cause shall be regarded as ground of reversal, than 'such as appears on the face of the record.' No question apparently about the legality of the court had been raised on the trial or decided by the parish court.
 
 Mr. Durant, against the motion:
 
 The case presented to the Supreme Court of Louisiana, by the appeal, was one where a judge had exercised an authority under an insurgent organization, assuming to be an independent state and part of a confederacy unacknowledged and at war with the United States, and such authority was repugnant to the Constitution and laws of the United States. Such exercise of authority was null, and it was the duty of the Supreme Court of Louisiana so to declare it. For a court of error will take judicial notice of the nature and extent of the jurisdiction of the inferior court, whose judgment it revises.[1]
 Where the judge is incompetent ratione materiae—still more so where he is a mere usurper—the want of jurisdiction may be shown at any stage of the cause.[2] And the judge is bound to notice such defect ex officio.[3]
 The fact that the inhabitants of Louisiana were, in October, 1861, in insurrection, was one which the Supreme Court of Louisiana w s bound to notice, and so noticing it to declare that no judicial authority could be recognized under it as valid by a court sitting under the Constitution.
 They did not do this. On the contrary, in confirming the judgment of the so-called court of the parish of St. Bernard, they did thereby sustain and decide in favor of an authority exercised under a State in insurrection, and a constitution and laws drawn in question as repugnant to the Constitution of the United States. The insurrectionary court must have been decided by the Supreme Court of Louisiana to be a valid authority, in order to have induced the judgment affirming its decision. And in such a case it is not necessary that it should appear on the face of the record that the question was raised or the decision made in so many words.[4]
 
 Mr. Janin, in reply:
 
 Vattel, Grotius, Puffendorf, and other writers on public law, declare that a civilized nation, after having conquered another, will not add to the sufferings inseparable from war the unspeakable misery which would result from a destruction of all private dealings which took place previous to the conquest. This most civilized one has throughout the late troubles acted in the same spirit. When General Butler took possession of New Orleans, in May, 1862, he issued a proclamation, announcing that 'all the rights of property, of whatever kind, will be held inviolate, subject only to the laws of the United States,' and that 'civil causes between party and party will be referred to the ordinary tribunals.' This court, in commenting on it in The Venice,[5] say:
 'As far as possible, the people of such parts of the insurgent States as came under national occupation and control, were treated as if their relations to the National government had never been interrupted.'
 In Louisiana three volumes of reports, vols. 16, 17, and 18, of the Annual Reports of the Decisions of the Supreme Court, have been printed since the commencement of the political troubles. Neither of them has in the syllabus the word 'rebellion.' Vol. 16 contains the decisions rendered from January, 1861, to February, 1862, the judges being the same which held office before secession. The reports do not contain the slightest allusion to the political circumstances under which it was produced. The new court, organized in 1865, took cognizance of cases decided by the district courts before the restoration of Federal authority in Louisiana, without ever questioning their validity, between private individuals. In White v. Cannon,[6] a judgment had been rendered by the Supreme Court of January 31, 1861, five days after the secession of Louisiana. In 1865 the party cast made a motion in the new court to reinstate the case for reargument, because 'the judgment of the Supreme Court, having been rendered after the ordinance of secession, has become absolutely null and void.' The court said:
 'The only question before us is whether the judgment in question is absolutely null and void or not. We are clearly of opinion that it is not tainted with absolute unllity. As to the ordinance of secession, it was an absolute unllity, and produced no legal effect. The Supreme Court was not affected or changed by its passage.'
 But the case is not within the twenty-fifth section at all. No authority of the United States was set up in the parish court at all; and if it had been, it does not appear 'on the face of the record.' This ends the matter.
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 1
 The suit in the District Court for the parish of St. Bernard was an ordinary one for seizure and sale under a mortgage according to the practice prevailing in the courts of Louisiana. Indeed, this is hardly denied by the learned counsel for the plaintiff in error, but he relies on some infirmity in the jurisdiction of the court to hear and determin the case; and refers in support of it to certain insurgent proceedings in the State of Louisiana, against the then existing government, and to acts of Congress on the subject. But this question as to the competency of the court was not made on the trial, nor did the court below consider or determine any such question.
 
 
 2
 In order to give this court jurisdiction under the twenty-fifth section, it must appear on the record itself to be one of the cases enumerated in that section, and nothing out of the record certified to the court can be taken into consideration; and when the proceeding is according to the law of Lousiana, the case within the section must appear by the statement of facts and decision, as usually made in such cases by the court.[7] No such case or question appears on the present record.
 
 
 3
 WRIT DISMISSED.
 
 
 
 [1]
 Chitty v. Dendy, 3 Adolphus & Ellis, 319.
 
 
 [2]
 Lapeyer's Ex. v. Lafon, 1 Louisiana (New Series), 704; Merlin Repertoire de Jurisprudence, vol. 7, p. 122, edition, Brussels, 1826.
 
 
 [3]
 Kerr v. Kerr, 14 Louisiana, 179; Grenier v. Thielen, 6 Robinson, 365; Fleming v. Kiligsberg, 11 Id. 80.
 
 
 [4]
 Bridge Proprietors v. Hoboken Co., 1 Wallace, 116.
 
 
 [5]
 2 Wallace, 277.
 
 
 [6]
 16 Louisiana Annual, 85.
 
 
 [7]
 Armstrong v. Treasurer, 16 Peters 285.