*614 Mr. Justice MILLER
(now, January 11th, 1875) delivered the opinión of the court.
In the year 1867 Congress passed an act, approved February 5th, entitled an act to amend “An act to establish the judicial courts of the Uuited States, approved September the 24th, 1789.”* This act consisted of two sections, the first of which conferred upon the Federal courts and upon the judges of those courts additional power in regard to writs of habeas corpus, aud regulated appeals and other proceedings in that class of cases. The second section was a reproduction, with some changes, of the twenty-fifth section of the act of 1789, to which, by its title, the act of 1867 was an amendment, and it related to the appellate jurisdiction of this court over judgments and decrees of State courts.
The difference between the twenty-fifth section of the act of 1789 and the second section of the act of 1867 did not attract much attention, if any, for some time after the passage of the latter. Occasional-allusions to its effect upon the principles long established by this court under the former began at length to make their appearance in the briefs and oral arguments of counsel, but were not found to be so important'as to require auy decision of this court on the subject.
But in several cases argued within the last two or three years the proposition has been urged upon the court' that the latter act worked a total repeal of the twenty-fifth section of the former, and introduced a rule for the- action of this court in the class of cases to which they both referred, of such extended operation and so variant from that which had governed it heretofore that the subject received the serious consideration of the court. It-will at once be perceived that the question raised was entitled to the most careful examination and to all the wisdom and learning, and the exercise of the best judgment which the court could bring, to bear upon its solution, when it is fairly stated.
The proposition is that by a fair construction of the act of *615 1867 this court must, when it obtains jurisdiction of a case decided in a State court, by reason of one of the questions stated in the act, proceed to decide every other questioh which the case presents which may be found necessary to a final judgment on the whole merits. To this has been added the further.suggestion that in determining whether the question on which the jurisdiction of this court depends, has been raised in, any given case, we are not limited to the record which comes to us from the State court — the record proper of the ease as understood at common law-. — but we may -resort to any such method of ascertaining what was really done in the State court as this court may think proper, even-to ex parte affidavits.
When the case standing at the head of this opinion came on to be argued, it was insisted by counsel for defendants in error that none of the questions were involved in the cáse necessary to give jurisdiction to this court, either under the act of 1789 or of 1867, and.that if they were, there were other questions exclusively of State court cognizance which were sufficient to dispose of the case, and that, therefore,s the writ of .error should be dismissed.
Counsel for plaintiffs in error, on the other hand, argued that not only was there- a question in the case decided against them which authorized the writ of error' from this court under either act, but that this court having for this reason obtained jurisdiction of the case, should re-examine all the questions found in the record, though some of them might be questions of general common law or equity, or raised by State, statutes, unaffected by any principle of Federal law, constitutional or otherwise.
When, after .argument, the court came to consider the case in consultation, it was found that- it could not be disposed' of without ignqring or deciding some of these propositions, and it became apparent that the time had arrived when the court; must decide upon the effect of the act of 1867 on the jurisdiction of this court as it had been supposed to be estáblished by the twenty-fifth section of the act of 1789.
*616 That, we might .have all the aid which could be had from discussion of counsel, the court ordered a reargnment of the case on three distinct questions which it propounded, and invited argument, both oral and written, from any counsel interested in them. This reargument was had, and the court was fortunate in obtaining the assistance of very eminent and very able jurists. The importance of the proposition under discussion justified us in delaying a decision until the present term, giving the judges the benefit of ample time for its most mature examination.
With all the aid we have had from counsel, and with the fullest consideration we have been able to give the subject, we arc free to confess that its difficulties are many and embarrassing, and in the results we are about to announce we have not been able to arrive at entire harmony of opinion.
The questions propounded by the court for discussion by counsel were these:
1. Does the second section of the act of February 5th, 1867, repeal all or any part of the twenty-fifth section of the act of 1789, commonly called the Judiciary Act?
2. Is it the true intent and meaning of the act of 1867, above referred to, that when this court has jurisdiction of a case, by reason of any of the questions therein mentioned, it shall proceed to decide all the questions presented by the record which are necessary to a final judgment or decree?
3. If this question be answered affirmatively, does the Constitution of the United States authorize Congress to confer such a jurisdiction on this court?
1. The act of 1867 has no repealing clause nor any express words of repeal. If there is any repeal, therefore, it is one of implication. The differences between the two sections are of two classes, namely, the change or substitution of a few words or phrases in the latter for those used in the former, with very slight,- if any, change of meaning, and the omission in the latter of two important provisions fouhd in the former. It will be perceived by this statement that there is no repeal by positive new enactments inconsistent *617 ; iii tármá with the old law. It is the words that are wholly omitted in the néw statute' which constitute the- important ^feature in the questions thus propounded for discussion.
A careful comparison of these two sections (set-forth in parallel columns, supra, pp. 592, 598. — Rep.) can leave no doubt that it was the intention of Congress, by the. latter stát*, Ute, to revise the entire matter to which they both had reference, to make such changes in the law as it stood as they thought best, and to substitute their will in that regal’d entirely for the.old law upon the subject. We are of opinion' that it was their intention to make'a new law so far as the present law differed from the former, and that the new -lavv embracing all that was intended to.be preserved of the old, Omitting what was not so intended, became complete in itself and repealed all other law.on the subject embraced within it. The authorities on .this subject are clear and uniform.*
The result of this reasoning is that the twenty-fifth section of. the act-of 1789 is technically repealed, and that the second' section of the .act of 1867 has taken its place. What of the statute of 1789 is embraced in that of 1867 is of course the law now and has been ever since it was first made so.- What is changed or modified is the law as thus changed or modified. That,which is omitted ceased to have any effect fi’om the day that the substituted'statute was approved.
This view is strongly supported'by the consideration that the revision of the laws of Congress passed at the last session, based upon the. idea that no change in the existing law should be made,/has incorporated with the Revised Statutes-nothing but the second section of the act of 1867. Whatever might have been our abstract views of the effect of the act of 1867, we are, as to all the future cases, bound by the law as found in the Revised Statutes by the express language of Congress on that subject; and it would be labor lost to consider any other vifew of the question..
*618 2. The affirmative of the second question propounded above is founded upon the effect of the omission or repeal of the last sentence of the twenty-fifth section of the act of 1789. That clause in express terms limited the power of the Supreme Court in reversing'the judgment of a- State court, to errors apparent on the face of the'record and which respected questions, that for the sake of brevity, though not with' strict verbal accuracy, we shall call Federal questions, .namely, those.in regard to the validity or construction of the ,: Constitution, treaties, statutes, commissions, or authority of . the Federal govérqmeut.
, The argument may be thus stated: 1. That the Constitution declares that the judicial power of the United States shall exteinjl to cases of a character which includes the questions described in the section, and that by the word case, is ’to be undm'stóod all 0f the case in which such a quéstion arises^ 2. 'That by the .fair construction of the act of 1789 in regal’d to removing those eases to this court, the power and the duty of re-examining the whole case would have •been devolved on the court, but for the restriction of the "clause omitted in tjje act of 1867; arid that the same language is used in the latter act regulating' the removal, but omitting the restrictive clause. And, 8. That by re-enacting tbe statute in the same terms‘as to the removal of cases from /the State courts, without the restrictive-clause, Congress.is to be understood as .conferring the power which that clause prohibited.
We will consider the last proposition'first.
'What were the'precise motives which induced the- omission of-this .-clause it is-impossible to ascertain with any d'e- ’ gree of satisfaction. In a legislative body like Congress, it is reasonable to .suppose that among those who considered this matter at all,, there were varying reasons for consenting to the change. No doubt there were those who, believing that-the Constitution gave no right to the Federal judiciary to.go beyond the line marked by the omitted clause, thought its presence or absence immaterial; and in a revision of the statute it was wise to.' leave it out, because its presence im *619 plied that such a power was within the competency of Congress to bestow.- There were also, no doubt, those who believed that the section standing without that clause did not confer the power which it prohibited, and that it was, therefore, better omitted. It may also have been .within the thought of a few that all that is now claimed would follow the repeal of the-clause. But if Congress, or the framers of the bill, had a clear purpose to enact- affirmatively that the court should consider the class of errors which that, clause - forbid, nothiug hindered that they should say so in positive terms; , aud in reversing the policy Of the government from, its foundation, in one of the most important subjects on which that body could act, it is reasonably to be expected that Congress would use plain, unmistakable language in giving expression to s'uch intention.
There is, therefore, no sufficient reason for holding that Congress, by repealing' or omitting this restrictive clause, intended to .enact affirmatively the thing which that clause had prohibited.
We are thus brought to the examination of the section as it was passed by the. Congress of 1867, and as it now stands,. as part of the revised statutes of the United States-.
Before we proceed to any criticism of the languagesof the section, it may be as well to revert for a moment to the con-’ stitutional provisions which are supposed to, and which do, bear upon the'subject. The s'econd section of the third article, already ádverted lo, declares that- “ the judicial power shall extend to all. cases in law and equity arising under this Constitution, the laws of the United States, and treaties made or which Shall be tirade, under their authority.”
Waiving for the present the question whether.the power thus conferred extends-to all questions, in all cases, where only one of the questions involved arises under the Constitutiqu or laws of the United States, we fiud that this judicial power is by the Constitution vested in one Supreme Court and in such inferior courts as Congress may establish. Of - these courts the Constitution defines the jurisdiction of'none, bjit the Supreme Court. ' Of. that court it is said, after giving *620 it a very limited original jurisdiction, that “ in all other cases . before -mentioned, the Supreme Court shall, have appellate jurisdiction both as to law and fact, with such exceptions atid under such regulations as the Gongress may prescribe.”
This latter clause has been the subject-of construction in -this court many times, and the uniform and established doctrine is* that Congress'having by'the act of 1789 defined' and regulated this jurisdiction in certain-classes of cases, this . .affirmative-expression of the will of that body .is to be taken as excepting all other cases to which-the judicial power of . the United States extends, thhn those enumerated.*
It is als[> to'be remembered that,the exercise-of judicial . power ov^r cases arising under the Constitution, law^, and treaties of the United States, may be. originabas well as appellate, and may be conferred-by Congress on other courts than the Supféme Court, as it has done in several classes of bases which will be hereafter referred to. "We are uudef.no necessity, then, of supposing that Congress, in the section ..'we are considering, intended to confer on the Supreme Court the whole power which, by the Constitution, it was competent for Congress to confer in the class of cases embraced in that section.
Omitting for the moment that'part of the section which characterizes the questions necessary to the jurisdiction conferred, the enactment is, that a final judgment or decree in any' suit in the highest court of a State in which a decision in the suit can be had (when one of these questions is decided), maybe re-examined, and reversed or affirmed, in the 'Supreme Court of the United States, upon a writ of error . . . in, the same manner, and under the same regulations, and the. writ shall-have the same effect as if the judgment or decree complained of had been passed or rendered in a court of the United States.
. "It-is strenuously maintained that as the office of a writ of error at the Common iaw, and as it is used in relation-to the- *621 inferior eourtsof the United States when issued froni this court, is to remove the whole case to this court for revision upon its merits, of at least upon all the errors found in the record-of the case so removed, and as this statute enacts that these cases shallbe re-examined .in' the'samé manner, and under the same regulations, aud.the writ shall have.the same effect as in those cases, therefore all the errors found- in- a record so. removed from a State court niiust be reviewed so far as they are essential to a correct' final judgment On the whole case.
The proposition as thus stated has great force, and is eiititled to our most careful consideration. If the invariable effect of a writ'of error to a Circuit Court of.the.United' States is to require-of this court to examine and pass upon all the errors of . the inferior court, and if re-examination of the judgment of the court in the same -manner and under the' same regulations, means that in the re-examination everything is.to be considered which could'be considered in ence to the Circuit Court-, and nothing else, then the infer-a writ which is drawn from .these premises would seem to be correct-.
But let us consider,.this.
There are two principal methods known to English jurisprudence, and to the jurisprudence Of the,Federal courts, by which eases may be removed from an inferior to an'appellate court for review. These are the writ of error and the appeal-. There may.be, and'there are, other exceptional modes, such as the writ of certiorari at common law, aud,a certificate of division of opinion under the acts of Congress; ¡The' appeal, which is the only mode 'by which a decree in chhhcery or in admiralty can be brought from an inferior F'éderál court to this court, does' bring up the'whole case for re-examination on all-tbe merits, whether of law or fact, and,for consideration on these, as though no decree had ever been rendered. The writ of error is used to bring, up for review all other, cases, and when .thus brought here thé eáseá are not (open for re-examination on their whole merits, but every CQntrovérted question of fact' is excluded from consideration, and only *622 such errors as this court can see that the inferior court committed, and not all of these, can be the subject of this court’s corrective power.
Now,'one of the first things apparent on the face,of this-statute is that decrees in chancery, and in admiralty also, if á State court shall entertain jurisdiction of a case essentially, of admiralty cognizance, are to be removed into this court from the State courts by this writ of error as well as judgments' at law. And such has been .the unquestioned practice under the act of 1789 from its passage Until'n'ow. ■ But this writ cannot bring a decree in chancery or admiralty from the Circuit Cóurt to this court for .review. It has no such effect, and we dismiss every day cases .brought here by writ of error to a Circuit Court,'because they can only be brought here by appeal, and the writ of error does not extend to them.*
Unless, therefore, we have been wholly wrong for eighty yéars, under the act of 1789, and unless we are prepared’ to exclude chancery cases decided in the State courts from jthe effect.of this writ, it cannot, literally,'have the same effect as in cases, from a court of the United States; and if we could hold that the writ would have the samé effect in removing the case, which is probably all that is meant, still the-case when removed cannot literally be examined in the same manner; if by manner is meant the principle on which ,the judgment of the court must rest. Ipor chancery cases, when brought here from the Circuit Courts, are brought for a trial de novo on ¿11 the evidence and pleadings in the case.
It is, therefore, too obvious to need -comment, that, this statute was designed to bring equity suits to this court from the State courts by writ of error, as well as law cases, and that it was not intended that they should be re-examined in the same manner as if brought here from r court of fhe United States, in the sense of the proposition we are considering.
But,passing- from this consideration,’what has beén the manner 'in which this court re-examiues..the judgments of *623 the Circuit Courts on writs of error, as touching the errors into which it will look for reversal? For it is - this -manner which is -supposed to require an examination of all .errors, whether of'Federal law or otherwise under this statute. It .requires but slight examinatioriof the reports pithe-decisions or familiarity with the practice of this court, to know that it does not -examine into' or decide all the errors,-, or matter. assigned for error, of the most of the cases before them. Many-of these are found to be immaterial, the case being reversed or affirmed on some important point which requires of itself a judgment without regard to other matters. ■ There are errors also which may be sufficiently manifest of .which the appellate court lias no jurisdiction, as'in regard to a motion for a new trial, or to quash an indictment, or-for a continuance, or amendment of pleadings, or some other mattór which, however important to the, merits of the case, is within, the exclusive discretion of the inferior court..
Nor does it seem to us that the phrase “imthe same manner and under the same regulations, and the writ shall have the same effect” is intended to furnish the rule hy which the- court shall'be guidpd in the considerations, which should eDter into the judgment that it shall rénder. That the writ of error shall have the same effect .as if directed to a Circuit Court can méaii no more than that it shall transfer -the case to'.the Supreme Court, and with it. the record of the proceedings. in the court below. This is the effect of the writ and its function and purpose. When the court comes to eon-' sider the case it may be limited by the nature of the writ, but what it shall-review, and what it' shall not, must depend upon the-jurisdiction of the court in that class of cases as fixed by the law governing-that jurisdiction.
So the regulations here spoken of are. manifestly the rules under which the writ is issued, served, and returned; the notice to be given to'the adverse-party,'and time fixed for' appeárance, -a'rgument,-'&c.--. Another important effect of the writ arid of the regulations governing .it is that when accompanied by a proper, bond,.given and approved within the prescribed time,‘.ft operates as ,a-supersedeas to-further pro *624 ceedings in the inferior court. The word manner also much more appropriately expresses the general mode of proceeding with the case, after the writ has been allowed, the means by which the exigency of the writ is enforced, as by rule on' the clerk, or mandamus to the court, and the progress of-the case in the appellate court; as filing the record, docketing the case, time of hearing, order of the argument, and such other matters as are merely incident to final decision by the court. In short, the whole phrase is one eminently appropriate to the expression of the idea that these, cases,. though coming from State instead of Federal tribunals; shall be conducted in'their progress through the court, in. the matter of the general course of procedure, by the same rules' •of practice that prevail in cases brought under writs' of error to the courts of the United States.
This-is. a different thing, however, from laying down rules of decision, or enacting the fundamental principles on which the court must déci,de this class of cases. It . differs widely from an attempt to say that the court in coming to a judgment must consider this matter and disregard that. It is by no means the language in which a legislative body would undertake to establish the principles on which a court of last resort must form its judgment.
There is an instance of the use of very similar language /by- Congress in reference to the removal of causes into this court for review which has uniformly received the construction which \ie now place upon this:
By the Judiciary Act of 1789, there was no appeal, in the judicial sense of that word, to this court iii any case. Decrees, in suits in equity and admiralty were brought up by writ .of error only, until the act of 1803; and as this writ' could not bring up a' case to 'be tried on .its controverted questions of .fact, the nineteenth section of the act of 1789 required the inferior courts to make a finding of facts which should be accepted as true, by the appellate court. But by the act of March 3d, 1803,* these cases were to be brought *625 to this court by appeal, and to give this appeal full effect the nineteenth section of the act of 1789 was repealed, and upon such apipeal the court below was directed to send to this court all the pleadings, depositions, testimony, and proceedings. In this manner the court obtained that full possession and control of the case'which the nature of an appeal implies. And it is worthy of observation that Congress did not rely upon the mere legal operation of the word appeal .to effect, this, but provided in express terms'the means necessary to insure this object.
But.to avoid the necessity of many words as to the mode in which the case should be brought to this court and conducted when here, it was enacted “ that such appeals shall be subject to the same, rules, regulations, and restrictions as are prescribed in law in case of writs of error.”. Here is language quite as strong as that we have had under consideration, and strikingly similar both in its purport and in the purpose to be served by it. .Yet no one ever supposed that when the court came to consider the judgment which it should render on such an appeal it was to be governed by the principles applicable to writs of error at common law. It was never thought for a moment, notwithstanding the use of the word “ restrictions,” that the- court was limited to questions of law apparent on the record; but the uniform course has been to consider it as a case to be tried de novoon all the considerations of law and of fact applicable to it. There are'many decision's of this court showing that these words have been held to apply alone to the course of procedure, to matters of mere practice, and not at all affording a rule for decision of the case on its merits in the conference-room.*
There is, therefore, nothing in the language of the act, as far as we have criticized it, which in express terms defines the extent of thb re-examination which this court shall give to such cases.
But we have not yet considered the most important part *626 of the statute, namely, that which declares that it is only' upon the existence'of certain questions in the case that this court can entertain jurisdiction at all. Nor is the mere existence of such a question in the case sufficient to give jurisdiction — the question must have been decided, in the State qpurt. Nor is it sufficient that-such a question was raised and was decided. It must have been decided in a certain way, that is, against the right set up under the Constitution* laws, treaties, or authority of the United States. The Federal question may have been erroneously decided. It may be quite apparent to this court that a wrong construction has been given to the Federal law,, but if the right claimed under it by plaintiff in error has been conceded to him, this court cannot entertain jurisdiction of the case, so very careful is the statute, both of 1789 and of 1867, to narrow, to limit, and define the jurisdiction which this court exercises over the judgments of the State courts. Is it consistent with this extreme caution to suppose that Congress intended, when those cases came here, that this court should not only examine those questions, but all others found in the record?' —questions of common law, of State statutes, of controverted facts, and conflicting evidence. Or is it the more reasonable inference that Congress intended that the case should be brought here that those questions might be decided and finally decided by the court established by the Constitution of the Union, and the court which has always been .supposed to be not only the most appropriate but the only proper tribunal for their final' decision ? No such reason nor any necessity exists for the decision, by this court of other questions in those cases. The jurisdiction has been exercised for nearly a century without serious inconvenience to the due administration of justice. The State courts are the appropriate tribunals, as this court has repeatedly held, for the decision of questions arising under their local law, -whether statutory or otherwise. And it is' not lightly to be presumed that Congress acted upon a principle which implies a distrust of their integrity or of their ability, to construe those laws correctly.
*627 Let us look for a moment into the effect of the proposition contended for upon the cases as they come up for consideration in the conference-room. If it is found that no such question is raised or decided.in the court below, then all will concede that it must be dismissed for waiit of jurisdiction. But if it is found that the Federal question was raised and was decided against the plaintiff in error, then the first duty of the court obviously is to determine whether it was correctly decided by the State court. Let us suppose that we find that the court below was right in its decision on that question. What, tlieu, are wé to do? Was it the intention of Congress to say that while you can only bring the case here on account of this question, yet when it is here; though it may turn out that the plaintiff" in error was wrong on that question, and the judgment of the court below was right, though he has wrongfully dragged the defendant into this court by the allegation of an error which did not exist, and without which the case could not rightfully be here, he can still insist on an inquiry into all the other matters which were litigated in the case? This is neither reasonable nor just.
In such case both the nature of the jurisdiction conferred and the nature and fitness of things demand that, no error being found in the matter which authorized the re-examination, the judgment of the State court should be affirmed, and the case remitted to that court for its further enforcement.
The whole argument we are combating, however, goes upon the assumption that when it is found that the record shows that one of the questions mentioned has been decided against the claim of the plaintiff in error, this court has jurisdiction, and that jurisdiction extends to the whole ease. If it extends to the whole case then the court must reexamine the whole case, and if it re-examines it must, decide the whole case. It is difficult to escape the logic of the argument if the first premise be conceded. But it is here the error lies. We are of opinion that upon a fair construction of the whole language of the section the jurisdiction con *628 ferred is limited to the decision of the questions mentioned in the statute, and, .as a necessary consequence of this, to the exercise of such'powers as may be necessary to cause the judgment in that decision to be respected.
We will now advert to one or two considerations apart from the mere .language of the statute, which seem to us to give additional force to this conclusion.
It has been many times decided by this court, on motions to dismiss this class of cases for want of jurisdiction, that if it appears from the record that the plaintiff in error raised and presented to the court by pleadings, prayer for instruction, or other appropriate method, one of the questions specified in the statute, and* the court ruled agaiust him, the jurisdiction .of- this court attached, and we must hear the case on its merits.* Heretofore these merits have beéu held to be to determine whether the propositions of law involved iii the specific Federal question were rightly decided, and if not, did the case of plaintiff in error, on the pleadings and evidence, come within the principle ruled by this court. This has always been held tobe the exercise of the jurisdiction and re-examination of the case provided by the statute. But if' when we once get jurisdiction, everything in the case is open to re-examination, it follows that every case tried in any State court, from that, of a justice of the peace to the highest court of the State, may be brought to this court for final decision on all the points involved in it.
That this is no exaggeration let us look a moment.
- Suppose a party is sued before a justice of the. peace for assault and battery. He pleads that he was a deputy marshal of the United States, and in serving a warrant' of arrest on plaintiff he gently laid his hands on hint and used no more force than was necessary. He also pleads the general issue. We will suppose that to the special plea some response is made which finally leads to a decision against the defendant on that plea. And judgment is rendered against *629 him on the general issue also. He never was a deputy marshal. He never had a writ from a United States court; but he insists on that plea through'all the courts up to this, and when he gets here the record shows a Federal question decided against him, and this court must re-examine the whole case, though there was not a particle of truth in his plea,- and it was a mere device to get the'case into this court. Very many cases are brought here now of that character. Also,- cases where the moment the Federal question is gtated by counsel we all know that there is nothing in it. This has become such a burden and abuse that we either refuse to hear, or hear only one side of many, such, and stop the argument, and have been compelled to adopt a rule that when a motion is made to dismiss it shall only be'- heard on printed argument. If the temptation to do this is so-stfong, under -the rule of this court for over eighty years to hear only the Federal question, what are we to expect when, by merely raising one of those questions in any case, the p.arty who does it can bring it here for decision on all the matters of law and fact involved in it. It is to be remembered that there is not even a limitation as to the value in controversy in writs to the Staté courts as there is to .the Circuit Courts;. and it follows that there is no conceivable- case so insignificant in amount or unimportant in principle that a perverse and obstinate man may not bring it to this court by the aid of a sagacious lawyer raising a Federal question in the record — a point" which he may be wholly unable to -support’ by the facts, of which he may well knew will be decided against him the moment it is stated. - But he- obtains his object, if this court, when the case is once open to re-examination on account of-that question, must decide all the others that are to be found in the record.
It is impossible to believe that Congress intended this fe.sult, and equally impossible that they did not see that it would follow if they intended to open the cases- that are 'brought here under this section to re-examination on all the points involved' in them and necessary to a final judgment on the merits.
*630 The twenty-fifth section of the act of 1789 has been the subject of innumerable decisions, some of which are to be found in almost eVery volume of the reports from that.year down to the present. These form a system of appellate jurisprudence relating to the exercise of the appellate power of this court over the courts of the States. That system has been' based upon the fundamental principle that this jurisdiction was limited to the correction of errors relating solely to Federal law. And though it may be argued with some plausibility that the reason of this is to be found in the restrictive clause of the act of 1789, which is omitted in the act of 1867, yet an examination of the cases will show that it rested quite as much on the eonvictiou of this court that without that clause and on general principles the jurisdiction extended no further. It requires a very bold reach of thought, .and a readiness to impute to Congress a radical and hazardous change of a policy vital in its essential nature to the independence of the State courts, to believe that that body contemplated, or intended, what is claimed, by the mere omission of a clause in the substituted statute, which may well be held to have been superfluous, or nearly so, in the. old one.
Another consideration, not without weight in seeking after the intention of Congress, is found in .the fact that where that body has clearly shown an intention to bring the whole of a case which arises under the constitutional provision as to its subject-matter under the jurisdiction of a Federal court, it has conferred its cognizance on Federal courts of original jurisdiction and not on the Supreme Court.
It is the same clause and the same language which declares in the Constitution that the judicial power shall extend to cases arising under the .Constitution, laws, and treaties of the United States and to cases of admiralty and maritime jurisdiction. In this same act of 1789 the jurisdiction in admiralty and maritime cases is conferred on the District Courts of t? United States, and is made’ exclusive. Congress has in like manner conferred upon the same court exclusive oi’iginal jurisdiction in all cases of bankruptcy. ‘
*631 Upon the Circuit Court it has conferred jurisdiction with exclusive reference to matters of Federal law, without regard to citizenship, either originally or by removal from the State courts in cases of conflicting titles to land under grants from different States.* In cases arising under the patent laws.† In suits against banking associations organized.under the laws of the United States.‡ In suits against individuals on account of acts done under the revenue laws of the United States.§ In suits for damages for depriving, under color of State laws, any person of rights, privileges, or immunities secured to him by the Constitution or laws of .the United States.||
The acts referred to, and perhaps others not enumerated, show very clearly that when Congress desired a case to be tried on all the issues involved in it because one'of those issues was to be controlled’ by the Constitution, laws, .or .treaties of the United States, it was their policy to vest its cognizance in a court of original jurisdiction, and not in an appellate tribunal.
And we think it equally clear that it has been the counterpart of the same policy to vest in the Supreme Court, as a court of appeal from the State courts, a jurisdiction limited to the questions of a Federal character which might be involved in such cases.
It is not difficult to discover what the purpose of Congress in the passage of this law was. In a vast number of cases the rights of the people of the Union, as they are administered in the courts of the States, must depend upon the construction which those courts gave to the Constitution, treaties, and laws of the United States. The highest courts of the States were sufficiently numerous, even in 1789, to cause it to be feared that, with the purest motives, this eonstruc *632 tioü given in different courts would be. various and conflicting. It was desirable, however, that whatever conflict of opinion might, exist.in those .courts on. other subjects, the rights which depended on the Federal laws should be,the same everywhere, ánd that their'construction should be uniform. This could only be done by conferring upon the Supreme Court of the United States — the appellate tribunal established by the Constitution — the right to decide these questions finally and in a manner which would be conclusive on all other courts, State or -National. This was the first purpose of the statute, and it does not require that, in a case involving a variety of questions, any other should be decided than those described in the act.
Secondly.- It was no doubt the purpose of Congress to secure to every litigant whose rights depended ón any ques- , tion of Federal law that that.question should be decided for him by.the. highest Federal tribunal if he desired it, when the decisions of the State courts were against him on that question. That rights.of this character, guaranteed to. him by the Constitution and laws of the Union, should not be left to the exclusive and final control of the State courts.
There may be some plausibility in the argument that these rights cannot be protected in all mases unless the Supreme Court has final control of the whole case. . But the experience of eighty-five years of the "administration of the law under the opposite theory would seem to be a satisfactory answer to the argument. It is not to be presumed that the State courts, where the rule is clearly laid down to them on the Federal question, and its influence on,the case fully seen, will disregard, or overlook it, and this is all that the rights of the party claiming under it require. Besides, by the very terms of this statute, when the Supreme Court is of opinion that the question of Federal law is of such relative importance to the whole case that it.should control the final judgment, that court is authorized to render such judgment and enforce it by its own process. It camiot, therefore, be maintained that it is-in any case necessary for the security of the rights claimed under the Constitution, laws, or treaties of *633 the United States that the/,’Supreme Gourt should examine and decide other, questions not of a Federal character.
And we are of opinion that the act of 1867 cloes not confer such a jurisdiction.
• -This renders unnecessary a 'decision of the question whether, if Congress had conferred such authority, the act would have been constitutional. It will be time enough for this court to inquire into the existence of su<jh a.power when that body has attempted to exercise it in language which makes such an intention so clear as to require it.
The omitted clause of the act of 1789 declared that no other error should be regarded as a ground of reversal than such "as appears on the face of the record and immediately respects the beforementioned questions;
It is probable that in determining whether one of those questions was actually raised and decided in the State court, this court has been inclined to restrict its inquiries too much by this express limitation of the inquiry “ to the face of the record.”* What was the record of a case was pretty well understood as a common-law phrase at the time that statute was enacted. But the statutes of the States and new modes of proceedings in those courts have changed and confused the matter very much since that time.
It is in reference to one of the necessities thus brought about that this court long since determined to-consider »s part of the record the opinions delivered in such eases by the Supreme Court of Louisiana.† And though we have repeátedly decided that the opinions of other .State* courts cannot be looked into to ascertain what was decided, we see no reason why, since this restriction is removed, wé should not so far examine those opinions, when properly authenticated, as may be useful in determining that question. We have been in the habit of receiving the certificate of the court signed by its chief justice or presiding officer on that point, though not as conclusive, and these opinions are quite *634 as satisfactory and may more properly be treated.as part of the record than such certificates.
But after all, the record of the case, its pleadings, bills of' exceptions, judgment, evidence, in short, its record, whether it be a case in law or equity, must be the chief foundation of the inquiry; and while we are not prepared to fix any absolute limit to the sources of the inquiry under the new-act, we feel quite sure it was not intended to open the scope of it to any loose range of investigation.
It is proper, in this first attempt to construe this important statute as amended, to say a few words on another point. What shall be done by this court when the question has been found to.exist in the record, and to have been decided against the plaintiff in error, and rightfully decided, we have already seen, and it presents no difficulties.
But. when it appears that the Federal question was decided erroneously against the plaintiff in error, we must then reverse the case undoubtedly, if there are no other issues decided in it than that. It often has occurred, however, and will occur again, that there are other points in the case than those of Federal cognizance, on which the judgment of the court below may stand; those points being of themselves sufficient to control the case.
Or it may be, that there are other issues in the case, but they are not of such controlling influence on the whole case that they are alone sufficient to support the judgment.
It may also be found that notwithstanding there, are many other questions in the record of the case, the issue raised by the Federal question is such that its decision must dispose of the whole case.
In the two latter instances there can be no doubt that the judgment of the State court must be reversed, and under the new act this court can either render the final judgment or decree, here, or . remand the case to the State court for that purpose.
But in the other cases supposed, why should a judgment be reversed for an error in deciding the Federal question, if the same judgment must be rendered on the other points *635 in the case? And why should this court reverse a judgment which is right on the whole record presented to us; .or where the same judgment will be rendered by the court below, after they have corrected the error in the Federal question ?
We have already laid down the rule that we are not authorized to examine these other questions for the purpose of deciding whether the State court ruled correctly on them of not. We are of opinion that on these subjects not embraced in the class of questions stated in the statute, we must receive the decision of the State courts as conclusive.
But when we find that the State court has decided the Federal question erroneously, theu to prevent a useless and profitless reversal, which can do the plaintiff in error no good, and can only embarrass and delay the defendant, we must so far look into the remainder of the record as to see whether the decision of the Federal question alone is sufficient to dispose of the case, or to require its reversal; or on the other hand, whether, there exist other matters in the record actually decided by the State court which are sufficient to maintain the judgment of that court,'notwithstanding the error in deciding the Federal question. In the latter case the court would not be justified in reversing the judgment of the State court.
But this examination into the points in the record other than the Federal question is not for the purpose of determining whether they were correctly or erroneously decided, but to ascertain if any such have been decided, and their sufficiency to maintain the final judgment, as decided by the State court.
Beyond this we are not .at liberty to go, and we can only go this far to prevent the injustice of reversing a judgment which must in the end be reaffirmed, even in this court, if brought here again from the State court after it has corrected its error in the matter of Federal law.
Finally, we hold the following propositions on this subject as flowing from the statute as it now stands:
1. That it is essential to the jurisdiction of this court over *636 the judgment of a State court, that-it shall appear that one of the questions mentioned in the act must have been raised, and presented to the State court.
2. That it must have been decided by the State court, or that, its decision was necessary to the judgment or decree, rendered in the case.
3. That the. decision must have been against the right claimed or asserted by plaintiff in error under the Constitution' treaties, laws, or authority of the Uuited States. •
4. These things appearing, this court has jurisdiction and must examine the judgment so far as to enable it to decide whether this claim of right was correctly adjudicated by the State court.
5. If it finds that it was rightly decided, the judgment must be affirmed.
6. If it was erroneously decided against plaintiff in error, then this court must further inquire, whether there is any other matter or issue adjudged by the State court, which is sufficiently broad to maintain the judgment of that court, notwithstanding the error in deciding the issue raised by the Federal question. If this is found to be the case, the judgment must be affirmed without inquiring into the soundness of the decision on such other matter or issue.
7. But if it be found that the issue raised by the question of Federal law is of such controlling character that its correct decision is necessary to any final judgment in the case, or that there has been no decision by the State court of any other matter or issue which is sufficient to maintain the judgment of that court without regard to the Federal question, then this court will reverse the judgment of the State court, and will either render such judgment here as the State court should have rendered, or remand the case to that court, as- the circumstances of the case may require.’
Applying the principles here laid down to the case now before the court, we are of opinion that this court has jurisdiction, and that the judgment of the Supreme Court of Tennessee must be affirmed.
The suit was a bill in cháncery brought by Murdock and *637 others against the city of Memphis to have a decree establishing their light in certain i-eal estate near that city. The United States having determined .to build a navy yard at Memphis, about the year 1844, or previous thereto, the city of Memphis, on the 14th day of September of that year, conveyed to the United States the land in controversy by an ordinary, deed of general warranty, expressing on its face the consideration of $20,000 paid, and designating no purpose for which the land was conveyed. After retaining possession of the land for about ten years without building a navy yard, the United States abandoned that purpose, and by an act approved August 5th, 1854, ceded the property to the city of Memphis by its corporate name for the use and benefit of said city.
The plaintiffs in error, by their bill, allege that the title was originally conveyed to the city of Memphis, in trust, for certain purposes, including that of having a navy yard built on it by the United States; that when the title reverted to the city by reason of the abandonment of the place as a navy yard by the United States, and the act of Congress aforesaid, the city received the title in trust for the original grantors, who are the plaintiffs, or who are represented by plaintiffs. A demurrer to the bill was filed. .Also an answer denying the trust, and pleading the statute of limitations. On the hearing the bill was dismissed, and this decree was affirmed by the Supreme Court of the State. The complainants, in their bill, and throughout the case, insisted that the effect of the act óf 1,854 was to vest the title in the mayor or aldermen of the city in trust for them.
It may be very true that it is not easy to see anything in the deed by which the United States received the' title from the city, or the act by which they ceded it back, which raises such a trust, but the complainants claimed a right under this act of the United States, which was decided against them by the Supreme Court of Tennessee, and this claim gives jurisdiction of that question to this court.
But we need not consume many words- to prove that neither .by the deed of the city to the United States, which *638 is an ordinary deed of bargain and sale for a valuable consideration, nor from anything found in the act of 1854,* is there any such trust to be inferred. The act, so far from recognizing or implying any such trust, cedes the property to the mayor and aldermen for the use of the city. We are, therefore, of opinion that this, the only Federal question in the case, was rightly decided by the Supreme Court of Tennessee.
But. conceding this to be true, the plaintiffs in error have argued that the court having jurisdiction of the case must now examine it upon all the questions which affect its merits; and they insist that the conveyance by which the city of Memphis received the title previous to the deed from the city to the government, aud the circumstances attending the making of the former deed are such, that when the title reverted to the city, a trust was raised for the benefit of plaintiffs.
After what has been said in the previous part of this opinion, we need discus's this matter no further. The claim of right here set up is one to be determined by the general principles of equity jurisprudence, and is unaffected by anything found in the Constitution, laws, or treaties of the United States. Whether decided well-or otherwise by the State court, we have no authority to inquire. According to the principles we have laid down as applicable to this class of cases,-the judgment of the Supreme Court of Tennessee must be
Affirmed.

 14 Stat. at Large, 385.

 United States v. Tynen, 11 Wallace, 88; Henderson Tobacco, Ib. 652; Bartlet v. King, 12 Massachusetts, 537; Cincinnati v. Cody, 10 Pickering, 36; Sedgwick on Statutes, 126.

 Wificart v. Dauchy, 3 Dallas, 321; Durousseau v. United States, 6 Cranch, 307; The Lucy, 8 Wallace, 307; Ex parte McCardle, 6 Id. 318; S. C. 7. Id. 506.-

 The San Pedro, 2 Wheaton, 132; McCollum v. Eager, 2 Howard, 61; Minor v. Tillotson, Ib. 392; Benton v. Lapier, 22 Id. 118.

 2 Stat. at Large, 244.

 Villabolos v. United States, 6 Howard, 81; Castro v. United States, 3 Wallace, 46; Mussina v. Cavazos, 6 Id. 3S5.

 Rector v. Ashley, 6 Wallace, 142; Bridge Proprietors v. Hoboken. Co., 1 Id. 116; Turman v. Nichpl, 8 Id. 44; Armstrongs. Treasurer, 16 Peters, 281; Crowell v. Randell, 10 Id. 368.

 1 Stat. at Large, 89.

 16 Id. 206, 215.

 13 Id. 116.

 Act of March 2d, 1833, 4 Id 632, and act of July 13th, 1866, 14 Id. 176.

 Act of May 31st, 1870, 16 Id. 114; and act of April 20th, 1871, 17 Id. 13. See also for removal of cases of similar character from State courts, act of March 3d, 1863, 12 Id. 756; act of April 9th, 1866, 14 Id. 46; and act of May 31st, 1870, 16 Id. 144.

 Williams v. Norris, 12 Wheaton, 117; Rector v. Ashley, 6 Wallace, 142

 Grand Gulf Railroad Co. v. Marshall, 12 Howard, 165; Consin v. Blanc’s Executor, 19 Id. 202.

 10 Stat. at Large, 586.