GILVARY *v.* CUYAHOGA VALLEY RAILWAY CO.

No. 575. Argued March 8, 1934.—Decided April 2, 1934.

*Mr. M. L. Bernsteen,* with whom *Mr. Glen A. Boone* was on the brief, for petitioner.

*Mr. W. T. Kinder* for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This is an action brought by petitioner to recover for personal injuries sustained by him in April, 1929, while employed by respondent as a switchman at Cleveland, Ohio. Respondent is a common carrier by railroad wholly within that State engaged in intrastate and interstate commerce. And the Safety Appliance Acts make it unlawful for it to haul or permit to be hauled or used on its line any car not equipped with couplers coupling automatically by impact.[1] In accordance with the Ohio workmen's compensation act,[2] petitioner and respondent had

---

[1] § 2, Act of March 2, 1893, 27 Stat. 531, 45 U.S.C., § 2. § 1, Act of March 2, 1903, 32 Stat. 943, 45 U.S.C., § 8.

[2] "The provisions of this act shall apply to employers and their employes engaged in intrastate and also in interstate and foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, and then only when such employer and any

theretofore notified the industrial commission that they elected, in case of any injury sustained by petitioner while engaged in intrastate commerce, to have their respective rights and liabilities governed by the provisions of that Act. The commission had approved the agreement, respondent paid the premiums necessary to keep it in force and in all respects complied with the law. Petitioner was injured while he and respondent were engaged in intrastate commerce.

The complaint alleges that his injuries were caused by respondent's failure to comply with the Safety Appliance Acts in that cars which he, with other members of his crew, was attempting to couple were not equipped with couplers that would couple automatically by impact, thereby making it necessary for him to go between the ends of the cars where he was caught and injured. In addition to a denial of the violation of the statutes, respondent's answer sets up the election to be bound by the state compensation act. The court held that the agreement was not sufficient to constitute a defense and struck out that part of the answer. The trial resulted in a verdict and judgment for petitioner. The court of appeals reversed and gave final judgment in favor of the respondent " for the reason that the acceptance and notice of election by the employee contract approved by the Industrial Commission of Ohio is a complete bar to a right

of his workmen working only in this state, with the approval of the state liability board of awards, and so far as not forbidden by any act of congress, voluntarily accept the provisions of this act by filing written acceptances, which, when filed with and approved by the board, shall subject the acceptors irrevocably to the provisions of this act to all intents and purposes as if they had been originally included in its terms, during the period or periods for which the premiums herein provided have been paid. Payment of premium shall be on the basis of the payroll of the workmen who accept as aforesaid." G.C., § 1465–98.

of recovery in this action." In the state supreme court, the judges being equally divided in opinion, the judgment of the court of appeals was affirmed.

As the petitioner when injured was not engaged in interstate commerce, the Federal Employers Liability Act does not apply, and the question is whether the agreement of the parties, in pursuance of the Ohio statute, is repugnant to the Federal Safety Appliance Acts.

Unless excluded by congressional enactment under the commerce clause, state law governs the respective liabilities and rights of railroad carriers and their employees growing out of injuries suffered by the latter whether in interstate or intrastate commerce. *Second Employers' Liability Cases,* 223 U.S. 1, 54. The power conferred upon the Congress is such that when exerted it excludes and supersedes state legislation in respect of the same matter. But Congress may so circumscribe its regulation as to leave a part of the subject open to state action. *Atlantic Coast Line* v. *Georgia,* 234 U.S. 280, 290. Cf. *Napier* v. *Atlantic Coast Line,* 272 U.S. 605. The purpose exclusively to regulate need not be specifically declared. *New York Central R. Co.* v. *Winfield,* 244 U.S. 147. But, ordinarily such intention will not be implied unless, when fairly interpreted, the federal measure is plainly inconsistent with state regulation of the same matter. *Illinois Cent. R. Co.* v. *Public Utilities Comm'n,* 245 U.S. 493, 510.

The Safety Appliance Acts govern common carriers by railroad engaged in interstate commerce. The Act of 1893 applied only to vehicles used by them in moving interstate traffic. 45 U.S.C., § 2. Its requirements were by the Act of 1903 extended to all their vehicles. *Id.,* § 8. *Southern Ry. Co.* v. *United States,* 222 U.S. 20, 26. *Moore* v. *Chesapeake & Ohio Ry. Co.,* 291 U.S. 205, 213. So far as the safety equipment of such vehicles is concerned, these Acts operate to exclude state regulation whether consistent,

complementary, additional or otherwise. *Prigg* v. *Pennsylvania,* 16 Pet. 539, 617. *Southern Ry. Co.* v. *Railroad Comm'n,* 236 U.S. 439, 446. *Internat. Shoe Co.* v. *Pinkus,* 278 U.S. 261, 265. The imposition of penalties (*id.,* § 6) and abrogation of assumption of risk (*id.,* § 7) are measures for enforcement.

A violation of the Acts is a breach of duty owed to an employee, whether he is at the time engaged in interstate or in intrastate commerce. And by abolishing assumption of risk the Acts impliedly recognize the right to recover for injuries resulting therefrom. But the absence of a declaration similar to that in the Federal Employers Liability Act, which denounces contracts and other arrangements made for the purpose of exempting carriers from liability created by that Act (45 U.S.C., § 55), strongly suggests a lack of legislative purpose to create any cause of action therefor. Moreover, if there had been such purpose, Congress probably would have included provisions in respect of venue, jurisdiction of courts, limitations, measure of damages, and beneficiaries in case of death.

Petitioner cites language in *Texas & Pacific Ry. Co.* v. *Rigsby,* 241 U.S. 33, 41. But that case is not in point on the question under consideration in this case. There we were called upon to decide whether a railroad employee engaged in intrastate commerce upon the line of an interstate carrier was within the protection of the Safety Appliance Acts. We held that he was. The opinion supports our recent construction of these Acts that, while they prescribe the duty, the right to recover damages sustained by the injured employee through the breach " sprang from the principle of the common law " and was left to be enforced accordingly, or in case of death " according to the applicable statute." *Moore* v. *Chesapeake & Ohio Ry. Co., supra,* 215. *Minneapolis, St. P. & S. S. M. Ry. Co.* v. *Popplar,* 237 U.S. 369, 372. These Acts do not create,

prescribe the measure or govern the enforcement of, the liability arising from the breach. They do not extend to the field occupied by the state compensation Act. There is nothing in the agreement repugnant to them.

*Affirmed.*

MR. JUSTICE STONE and MR. JUSTICE CARDOZO concur in the result.