**NEW ORLEANS PUBLIC BELT R. COMMISSION FOR CITY OF NEW ORLEANS v. WARD.**

No. 13775.

United States Court of Appeals.
Fifth Circuit.

April 10, 1952.

See also 182 F.2d 654.

830

Michel Provosty, New Orleans, La., for appellant.

Bentley G. Byrnes, New Orleans, La., for appellee.

Before SIBLEY, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a final judgment of the district court enforcing an order of the National Railway Adjustment Board to the effect that the appellee (sometimes hereafter referred to as Mrs. Ward) is entitled to reinstatement as an employee of the appellant, (sometimes hereafter referred to as Public Belt) with seniority rights unimpaired, and is further entitled to be paid at the scheduled rate of her position for each working day she has been withheld from service except that the amount thereof should be less any amount earned in any other employment during the time in question.[1]

Since the rendition of the judgment by the district court, the Supreme Court of the United States has denied a petition for writ of certiorari to review the decision of the Supreme Court of California in State of California v. Brotherhood of Railroad Trainmen, 37 Cal.2d 412, 232 P.2d 857, certiorari denied 342 U.S. 876, 72 S.Ct. 166. Relying entirely on that decision, the appellant now challenges the jurisdiction of the Railway Adjustment Board and of the federal courts upon the ground that the "Railway Labor Act does not apply to a state owned and operated railroad engaged in interstate commerce even though the operation of the railroad is a proprietary activity of the state."[2]

---

1. The appellant sought unsuccessfully to question the order by suit for declaratory judgment. N. O. Pub. Belt R. Comm. v. Ward, 5 Cir., 182 F.2d 654.

2. Appellant's counsel, in an excess of zeal, mistakenly assert that "the action of the United States Supreme Court is binding on this Court." "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361; see also Sunal v. Large, 332 U.S. 174, 181, 67 S.Ct. 1588, 91 L.Ed. 1982; House v. Mayo, 324 U.S. 42, 48, 65 S.Ct. 517, 89 L.Ed. 739; Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 403, 51 S.Ct. 498, 75 L.Ed. 1142; Ohio ex rel. Seney v. Swift & Co., 260 U.S. 146, 151, 43 S.Ct. 22, 67 L.Ed. 176; Hamilton-Brown Shoe

Co. v. Wolf Bros. & Co., 240 U.S. 251, 258, 36 S.Ct. 269, 60 L.Ed. 629; Wade v. Mayo, 334 U.S. 672, 680, 68 S.Ct. 1270, 92 L.Ed. 1647; Maryland v. Baltimore Radio Show, 338 U.S. 912, 917–920, 70 S.Ct. 252, 94 L.Ed. 562. Moreover, the California Supreme Court's decision was based in part on a non-federal ground. 37 Cal.2d 412, 232 P.2d 857, 863. The United States Supreme Court has consistently adhered to the principle that it will not review a state court judgment based upon an adequate and independent non-federal ground, even though a federal question be involved and perhaps wrongly decided. Murdock v. Memphis, 20 Wall. 590, 636, 22 L.Ed. 429; Berea College v. Kentucky, 211 U.S. 45, 53, 29 S.Ct. 33, 53 L.Ed. 81; Fox Film Corp. v. Muller, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158; Herb v. Pitcairn, 324 U.S. 117, 125–126, 65 S.Ct. 459, 89 L.Ed. 789.

■ We do not think that the decision of the California Supreme Court on the coverage of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., is consistent with one of the main designs of that act "to avoid any interruption to commerce or to the operation of any carrier engaged therein" by requiring resort to the procedures it provides in the event of disputes "before they reach acute stages that might be provocative of strikes." Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 242, 70 S.Ct. 577, 579, 94 L.Ed. 795. Nor does that decision accord full recognition to the broad definition of the term "carrier" in the Railway Labor Act.[3] That decision is also contrary to the views of District Judge Kennerly in National Council of Railway Patrolmen's Union v. Sealy, 56 F.Supp. 720, 722–723, affirmed by this Court in, 5 Cir., 152 F.2d 500, see page 502, and is incompatible with decisions of the United States Supreme Court and of other federal courts.[4] We hold, therefore, that the Railway Labor Act applies to Public Belt.

A further consideration of the appeal calls for a fairly full statement of the facts. Mrs. Ward was not a member of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, A. F. of L., but her employment was under the terms of the contract between that organization and Public Belt. See Illinois Cent. R. Co. v. Moore, 5 Cir., 112 F.2d 959, 964; Yazoo & Miss. Valley Ry. Co. v. Webb, 5 Cir., 64 F.2d 902. A supplemental agreement to that contract provided in part:

"It is also agreed that similar leave of absence will be granted to clerical employees who are called by competent governmental authorities to accept service with other than the armed forces of the United States in connection with the National Defense Program and that this leave of absence will terminate within thirty (30) days after they sever their connection with such service."

In 1942 Colonel V. J. Bedell was Assistant Chief of Staff in Charge of Operations, Headquarters, New Orleans Port of Embarkation. He had previously been General Manager of the Public Belt and had resigned because of his reserve commission in the United States Army. On July 8, 1942, he wrote to Public Belt explaining that Mrs. Ward could handle his "peculiar style of dictation" and requesting "as a military necessity that you give Mrs. Ward a leave of absence for the duration of the emergency".

On the next day Mrs. Ward wrote Public Belt requesting

"* * * indefinite leave of absence for period of duration of war emergency, N. O. Port of Embarkation, with the privilege of returning to my former position or exercising seniority rights to any position bulletined during such absence in accordance with Rule 11, Art. 6 of agreement between New Orleans Public Belt Railroad and Brotherhood of Railway and Steamship Clerks, etc., or at any time within this period."[5]

3. 45 U.S.C.A. § 151, First. An almost identical definition in the Carrier's Taxing Act, 26 U.S.C.A. § 1532(h) was held in State of California v. Anglim, 9 Cir., 129 F.2d 455, to include the same California railroad.

4. State of California v. Anglim, supra; Universal Carloading & Distrbg. Co. v. Pedrick, 2 Cir., 184 F.2d 64, 65–66; Despatch Shops v. Railroad Retirement Board, 2 Cir., 154 F.2d 417, 418; Shields v. Utah Idaho Cent. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; U. S. v. California, 297 U.S. 175, 185–187, 56 S. Ct. 421, 80 L.Ed. 567; Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 242, 70 S.Ct. 577, 94 L.Ed. 795; Southern Ry. Co. v. R. R. Comm. of Indiana, 236

U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661; Gilvary v. Cuyahoga Valley Ry., 292 U.S. 57, 60–61, 54 S.Ct. 573, 78 L.Ed. 1123; Northern Pac. R. Co. v. Washington, 222 U.S. 370, 32 S.Ct. 160, 56 L.Ed. 237; I. C. C. v. Detroit, G. H. & M. R. Co., 167 U.S. 633, 642, 17 S.Ct. 986, 42 L.Ed. 306.

5. The part of the agreement referred to reads as follows:
"An employee returning from leave of absence may return to former position or may, upon return or within three (3) days thereafter, exercise seniority rights to any position bulletined during such absence. Employees displaced by his return may exercise their seniority in the same manner."

Public Belt's General Manager wrote Mrs. Ward that, "in pursuance to your written request of July 9, 1942, you are hereby granted an indefinite leave of absence effective Monday, July 13, 1942."

On October 1, 1943, Colonel Bedell was transferred to Mobile, Alabama, to command the Mobile Port of Embarkation. About that time, at Mrs. Ward's request, Colonel Bedell delivered to her a letter addressed to Public Belt and reading in substance:

"Due to reorganization of the New Orleans Port of Embarkation and the separation of the Department of Operations and Training, Mrs. L. H. Ward, who you so kindly furloughed for War work, is now free to return to your organization if you so desire."

Explaining that letter, Colonel Bedell testified that he gave it to Mrs. Ward so that she could present it on her return to the Public Belt and further:

"Q. When you left the Port of Embarkation, transferred to Mobile, you gave Mrs. Ward the release that has been shown to you? A. I gave Mrs. Ward a release insofar as I could give her a release.

"Q. Now what do you mean by that, Colonel? A. As far as my department was concerned, my division. I was releasing her from service with me, and that release was what I gave her.

"Q. Did that release her from the Port of Embarkation?"

The appellant objected to the last quoted question and its objection was sustained.

However the uncontradicted testimony of Mrs. Ward is to the effect that after receiving Colonel Bedell's letter of release she contacted her immediate superior, wrote the director of personnel, wrote the commanding general, and went to see the chief of staff, all in an effort to obtain a proper release from the New Orleans Port of Embarkation. She was told that her services were needed and she was transferred from one department to another until she was separated from her War Department employment through resignation on February 15, 1945. On February 17, 1945, Mrs. Ward requested that she be reinstated in her former position with Public Belt. The appellant refused to reinstate her on the ground that she had been released by letter of Colonel Bedell from service with the War Department on or about October 1, 1943, and since she did not return to work with appellant within the thirty day period provided in the agreement, she was not eligible for reinstatement.

Provision for the seniority list of clerks is contained in Section IV, Rule 1 of the contract quoted in the margin.[6] In January preceding Mrs. Ward's application for reinstatement Public Belt had posted the seniority list showing Mrs. Ward's standing as No. 20. The Brotherhood protested and requested that her name be removed from the seniority list.[7] In accordance with that protest and without notice to Mrs. Ward, her name had been removed from the seniority list a few weeks before she applied for reinstatement. On receipt of the letter from Public Belt refusing to reinstate her, Mrs. Ward, after conferences

6. "The Railroad will furnish in January of each year a seniority list of clerks employed, and shall post same in agreed places accessible to all employees affected. The said list will be posted for ten (10) days, allowing all concerned to enter protests, if any exist against it, and if no corrections or alterations are required, the said list shall be signed by the Local Chairman of the Brotherhood of Railway and Steamship Clerks' Freight Handlers, Express and Station Employees and will be official."

7. The Brotherhood later on May 28, 1945 undertook to withdraw that protest as made under the impression that Mrs. Ward's leave was granted for a specific purpose, and wrote to Public Belt:

"Since Mrs. Ward was not granted an indefinite leave for a specific purpose and could not return to the Public Belt until she was released by the War Department, New Orleans Port of Embarkation we, the Representative of the Brotherhood of Railway Clerks, request that our protest relative to Mrs. Ward, contained in the second and fourth paragraphs of my letter of January 31, 1945, be expunged therefrom, and that Mrs. Ward be allowed to exercise her seniority in accordance with the provisions of Rule 11, Section 4 of our agreement."

with the local representative of the Brotherhood in which she sought unsuccessfully to have the Brotherhood represent her in connection with such refusal, finally was successful in obtaining the assistance of the national representatives of the Brotherhood consisting of the System Committee who prosecuted her claim for her before the National Railway Adjustment Board.

Public Belt insists that there is a fatal procedural defect in the presentation of Mrs. Ward's case to the Adjustment Board in that Mrs. Ward did not comply with the section of the contract governing procedure in case of grievances beginning with Section VI, Rule 1(a):

"Should any employee subject to this agreement desire to make a complaint on grounds of unjust treatment or of violation of any of the provisions of this agreement, the employee must make such complaint to the head of his department within twenty-four (24) hours after the occurrence complained of."

Other parts of the rule provide for expeditious appeals up to the General Manager. In this case the General Manager had removed Mrs. Ward's name from the seniority list and had signed the letter refusing to reinstate her. Mrs. Ward had not actually worked for Public Belt since her leave was granted more than two and a half years before she applied for reinstatement. It seems to us that the quoted rule is intended to apply to an employee working under the head of a department, and has no application to a case of this kind. The Adjustment Board was of the opinion that Public Belt on its part should have complied with Rule 2(a) of the same section which reads as follows:

"No employee shall be disciplined or dismissed or otherwise unjustly treated without investigation at which the employee may be represented by the Protective Committee. The employee, however, may be held out of service pending such investigation. The in-

vestigation shall be held within five (5) days of date when charged with offense or held from service."

Neither rule clearly contemplates a case of refusal to reinstate an employee following a leave of absence. We think however that in the case of termination of employment by refusal to reinstate it should be just as readily presumed that the employee complains as when the employment is terminated by dismissal, that the hearing should precede the action, and that if either rule is applicable, it is Rule 2(a).

While we recognize the requirement that relief be sought through any applicable procedure outlined in the contract as a prerequisite to resorting to the Adjustment Board,[8] we think that there was no failure on Mrs. Ward's part to meet that requirement.

In his dissenting opinion in the declaratory judgment suit brought by Public Belt, 5 Cir., 182 F.2d 654, at page 657, Judge Waller noted the dilemma in which Public Belt was placed in that the reinstatement of Mrs. Ward with no loss in seniority would adversely affect the standing of employees junior to her; and the appellant now urges that the seniority rights of these junior employees should be preserved. Such employees have not been impleaded and are not before the Court. We may, however, remark that when the Public Belt posted the seniority list showing Mrs. Ward's standing the only protest came from the Brotherhood and that protest was withdrawn on May 28, 1945.[9]

With the jurisdictional and procedural objections disposed of, we have no difficulty in agreeing with the Adjustment Board and with the District Court, that, under the evidence, Mrs. Ward's leave of absence was not limited to the specific purpose of acting as stenographer-secretary to Colonel Bedell, but was an indefinite leave for the duration of the war emergency, and that she applied for reinstatement within two days, much less than the permissible thirty days, after she severed her

8. 45 U.S.C.A. § 153, subd. 1(i); Illinois Central R. Co. v. Moore, 5 Cir., 112 F.2d 959, 966.

9. See footnotes 6 and 7, supra.

connection with the service connected with the War Department. The judgment of the District Court is therefore

Affirmed.