Manuel W. Levine, J.
This is a motion to dismiss two informations, one charging the defendant with a violation of section 9 and the other charging the defendant with a violation of *698 section 10 of article One of the Ordinance of the Town of Hempstead, New York on speeding and operation of boats, which reads as follows:
“ Section 9. Every person operating a boat shall at all times operate the same in a careful and prudent manner and at such a rate of speed as not to disturb the reasonable comfort, or endanger the property of another or the life or limb of any person, or so as to interfere with the free and proper use of the waters of the said channel. Throwing up a dangerous wake when approaching or passing another boat is prohibited by this ordinance.
“ Section 10. No boat shall be operated at a greater speed than twelve miles per hour in channels nor at a greater speed than four miles per hour in areas designated as basin, dock anchorage or bathing areas.”
Article One is headed by the following statement: “ The Town Board of the Town of Hempstead, County of Nassau, State of New York, pursuant to Section 130 Subdivision 17 of the Town Law hereby ordains and enacts as follows: ” And then follow sections 9 and 10. The Hempstead ordinance was enacted pursuant to the authority contained in subdivision 17 of section 130 of the Town Law; it reads as follows: “17. Speed and operation of boats. Except when prohibited by the laws of the United States, regulating the speed and operation of boats * * * while being operated or driven upon any waters or waterways in the town or while being operated or driven upon any waters or waterways adjacent, to a distance of fifteen hundred feet from the shore. Such power and authority also shall extend to the mooring of boats in any such waters or waterways. The term ‘ boat ’ as used in this subdivision shall include every vessel propelled in any manner other than by hand. The provisions of this subdivision shall not apply to waters or waterways within an incorporated village or to waters or waterways adjacent, to a distance of fifteen hundred feet from the shore, jurisdiction with respect to which is vested in the board of trustees of a village by subdivision sixty-three of section eighty-nine of the village law.” The informations allege that the ordinances were violated by the defendant in Reynolds Channel, Long Beach, New York.
The defendant attacks the informations on constitutional grounds, urging point one:
Reynolds Channel is a navigable tidewater under the exclusive jurisdiction of the Federal Government *699 and point two:
that even if the Federal jurisdiction is not exclusive, that the regulation of boats on navigable waters of the United States is a field which has been pre-empted by the Federal Government.
Under point one the defendant urges that the act of navigation here involved is “ commerce ” within the meaning of article I (§ 8, subd. 3) of the United States Constitution, that the United States Constitution confers upon the Federal Government exclusive jurisdiction over interstate commerce and that any State or municipal statute which presumes to regulate in this area violates the constitutional scheme.
It is conceded that Reynolds Channel is a navigable waterway such as the United States Government might regulate under article I (§ 8, subd. 3), and it is further conceded that Reynolds Channel is within the territorial limits of the town of Hempstead, New York.
It may be true that the United States Constitution confers upon the Federal Government jurisdiction over interstate commerce but it does not follow from this that the State or its derivative creature, the town, is thereby prohibited from exercising its police power to regulate a local incident of that commerce. This has been the judgment of the United States Supreme Court in an unbroken line of cases from Cooley v. Board of Port Wardens (12 How. [U. S.] 299) to the present day. (Wilson v. Black Bird Creek Marsh Co., 2 Pet. [U. S.] 245; California v. Thompson, 313 U. S. 109; Parker v. Brown, 317 U. S. 341.)
In the Cooley case (supra) the view is sanctioned that the State Government possesses a commerce power concurrent with that of the Federal Government as to the local incidents of interstate commerce. Recent decisions have discarded this judicial technique and now speak of the commerce power of the United States Government on one hand and the police power of the several States on the other.
Whatever rationale may be approved, there can be no doubt that the Federal Government does not possess exclusive dominion over those activities described as interstate commerce, and the State or its municipal derivative may regulate the local aspects of that commerce, subject only to the criteria that the local police power shall not exceed its proper limits and that commerce must not be unreasonably burdened thereby.
Is either of those limiting rules violated? The court thinks not. The court finds that the ordinance of the Town of Hemp- *700 stead is within the scope of its police power. It is established beyond the need of citation that the police power includes the right to regulate the speed of vehicular transport, whether nautical or terrestrial in nature, it being only required that the vehicle in question be within the territorial limits of the political unit in question.
Moreover, it seems clear that the local ordinance does not unreasonably impose upon navigation. The United States Supreme Court and the New York Court of Appeals have repeatedly sustained regulations of equal or superior restrictiveness (Parker v. Brown, supra; Southern Pacific Co. v. Arizona, 325 U. S. 761; Kelly v. Washington, 302 U. S. 1; South Carolina Highway Dept. v. Barnwell Bros., 303 U. S. 177; People v. Jenkins, 1 Hill 469; Simpson v. Shepard, 230 U. S. 352; New York, N. H. & H. R. R. Co. v. New York, 165 U. S. 628).
Actually, the instant regulations far from burdening navigation, will contribute to its more effective operation by eliminating hazardous and obstructive practices.
Still under point one, the defendant argues that in the Navigation Law of New York, the State Legislature has recognized and acquiesced in the Federal Government’s control over navigable channels connected with tidewater, citing subdivision 4 of section 2 of the Navigation Law; defendant also alludes to section 30 of the Navigation Law which provides that the Superintendent of Public Works shall have jurisdiction over navigation on the navigable waters of the State. Subdivision 4 of section 2 states as follows: “ ‘ Navigable waters of the state ’ shall mean all inland lakes and streams wholly included within the state and not privately owned which are navigable in fact and are not connected by navigable channels with tidewater.”
It is the opinion of the court that the Navigation Law does not purport to limit the general sovereign power of the State but merely to define the scope of a particular law and the functional orbit of one particular official of the State — the Superintendent of Public Works. (People v. System Properties, 281 App. Div. 433.)
That this is so may be seen at once when one considers that the Superintendent of Public Works is denied jurisdiction under the Navigation Law over privately-owned lakes and streams connected by navigable channels with tidewaters. Surely the defendant would not urge that the Legislature of the State of New York was attempting to establish that it was beyond its competence to regulate so important a category of private property as privately-owned lakes and streams. On the con *701 trary, it is clear that this is not the meaning of the language in the Navigation Law. It is significant that the Legislature of the State of New York had, prior to the enactment of the Navigation Law, passed legislation affecting privately-owned lakes and streams and controlling their use. (Penal Law, §§ 1758, 1759.) After the passage of the Navigation Law, the Legislature enacted sections 1202 and 1220 of the Public Health Law; chapter VI of the regulations 1 and 12 (subd. [4], par. [c]) of the State Sanitary Code, and subdivision (1) of section 213 of the New York Conservation Law regulating privately-owned lakes and streams.
The defendant cites the case of People v. Hart (206 Misc. 490) in support of his argument as to the effect of the Navigation Law. The court is familiar with the case and reads it to stand at most only for the proposition that an act not committed on “ the navigable waters of the State ”, within the definition of that term in the Navigation Law, cannot be prosecuted under that law. In the Hart case the defendant was charged with reckless operation of a motor boat under the Navigation Law. Since section 1 of the Navigation Law provided that the act should apply only to navigable waters of the State, and since subdivision 4 of section 2 excluded tidewaters and section 1, by implication, excluded out-of-State waters from the category of “ navigable waters of the State ”, the court was quite correct in dismissing the charge against the defendant whose wrongful act concededly occurred in a channel connected by a navigable channel — Lake Ontario — with tidewater. The distinction between the Hart case and the instant one is that the defendant here has not been prosecuted under the Navigation Law but on the contrary has been charged with a violation of an ordinance of the Town of Hempstead, not passed pursuant to the authority of the Navigation Law but under the broad enabling grant contained in subdivision 17 of section 130 of the Town Law which sets no such limit to the police power of the Town of Hempstead as defendant claims is found in the Navigation Law.
This court hold that sections 9 and 10 of article 1 of the ordinance of the Town of Hempstead on speed and operation of boats are within the authority conferred by section 130 of the Town Law and that the State had the power to enact such legislation and could delegate that power.
Finally, it is decisive, to the court’s way of thinking, that the State of New York could not surrender so vital a dimension of its sovereign authority as the power to regulate privately- *702 owned lakes and streams and tidewaters by a mere act of legislation. Indeed, nothing less than a constitutional amendment would have been required to accomplish so basic a change in the structure of government.
In point two, referred to above, the defendant argues that there is a conflict between the laws of the Government of the United States and the Town of Hempstead and that the court must therefore strike down the Hempstead ordinance in deference to the mandate in paragraph 2 of article VI of the United States Constitution that where Federal and State laws conflict the former must prevail.
But what is the precise nature of the conflict alleged here? The defendant urges that the local ordinance is repugnant to the Motor Boat Act of 1940 (U. S. Code, tit. 46, § 526 et seq.) which provides as follows: “ § 5261 * * * No person shall operate any motorboat or any vessel in a reckless or negligent manner so as to endanger the life, limb or property of any person. * * * § 526n * * * Any officer of the United States authorized to enforce the navigation laws of the United States, shall have power and authority to swear out process and to arrest and to take into custody, with or without process, any person who may commit any act or offense prohibited by section 5261 * * * or who may violate any provision of said section : Provided, That no person shall be arrested without process for any offense not committed in the presence of some one of the aforesaid officials: Provided further, That whenever an arrest is made under the provisions of this subchapter, the person so arrested shall be brought forthwith before a commissioner, judge, or court of the United States for examination of the offense alleged against him, and such commissioner, judge, or court shall proceed in respect thereto as authorized by law in cases of crimes against the United States.”
It is true that the Congress of the United States has passed two laws regulating the conduct of marine craft: first, the Motor Boat Act of 1940, mentioned above, and second (U. S. Code, tit. 33, § 471) a statute which has application only to Federal mooring areas. Neither of the parties claims that Reynolds Channel is a Federal mooring area and the court takes judicial notice that it is not.
Regarding section 10 of the town ordinance, it is not asserted that the Federal Government has enacted legislation specifically regulating the speed of marine craft. It is therefore difficult to conceive how the court can find any conflict between the Motor Boat Act and section 10, which relates to speed. *703 Indeed, when the Congress of the United States has seen fit not to occupy the field of speed at all, it would seem unsound to argue that it has pre-empted that field.
As was mentioned above, the States may regulate the local incidents of interstate commerce in the absence of Federal law. It has been further held by the Supreme Court of the United States that even where the Congress of the United States partially regulates an area, the State may legislate on those phases neglected by the United States. (Whipple v. Martinson, 256 U. S. 41; Northwestern Bell Tel. Co. v. Ry. Comm., 297 U. S. 471; Maurer v. Hamilton, 309 U. S. 598; Welch Co. v. New Hampshire, 306 U. S. 79; Eichnolz v. Public Service Comm., 306 U. S. 268.) Moreover, the Supreme Court has uniformly held that a conflict between the Federal power and the police power of a State will not lightly be assumed and must be palpable and clear. (Gilbert v. Minnesota, 254 U. S. 325; Cohens v. Virginia, 6 Wheat. [U. S.] 264, 443; Missouri, K. & T. Ry. Co. v. Harris, 234 U. S. 412; Illinois Cent. R. R. Co. v. Public Utilities Comm., 245 U. S. 493; Atchison Ry. v. Railroad Comm., 283 U. S. 380; Gilvary v. Cuyahoga Val. Ry., 292 U. S. 57; Townsend v. Yeomans, 301 U. S. 441; Reid v. Colorado, 187 U. S. 137.)
In the case of Gilbert v. Minnesota, despite the exclusive power of the Federal Government to raise and maintain armed forces, the court sustained a Minnesota ordinance punishing persons who interfered with enlistments even though a comprehensive Federal criminal law proscribed identical activity. (40 U. S. Stat. 553.)
The court took the position that there was no repugnance between the two laws even though the Federal and the State laws contained provisions prohibiting the same conduct, since the State provision did not impede the enforcement of the total Federal scheme but rather assisted the implementation of that scheme. This analysis applies with, equal force to the instant case. In the nature of the situation there is no possibility that the enforcement of the Hempstead ordinance would in anyway compromise or weaken the enforcement of the Motor Boat Act of 1940. Even if the Hempstead ordinance is frequently and vigorously invoked, the Federal Government will still be perfectly free to give effect to the wide range of restrictions contained in its enactment, such as rules of the road, display of lights, etc. Further, the United States Government will not be prevented from prosecuting offenders under its “ reckless operation ’3 provision simply because there exists a local regulation of similar kind.
*704 The unanimous trend of judicial opinion has been that the United States Government and the Governments of the several States may each enact laws for the protection of its citizens and the State laws will be upheld unless the conflict be so clear and direct that the one is repugnant to the other.
In those cases where the United States Supreme Court has ruled that State and Federal laws were in conflict, they found not only that the United States Congress had enacted broad-gauged, finely-wrought, unified regulatory systems to achieve comprehensive central control, but also that this control would be so embarrassed by the State regulation that it must have been the intent of Congress to pre-empt the field, e.g. Hines v. Davidowitz (312 U. S. 52) and Pennsylvania v. Nelson (350 U. S. 497).
In the Bavidoioitz case, Congress had established a nationwide system of alien registration affecting a distinctly national problem — international relations — and thus disclosing a Congressional intent to pre-empt the field.
In Pennsylvania v. Nelson, decided April 2, 1956, by a six to three decision, the United States Supreme Court declared unconstitutional a law of the State of Pennsylvania which prohibited the advocacy of the overthrow of the Government of the United States or the Government of Pennsylvania by force or violence.
In that case the court held that the Pennsylvania statute proscribed the same activities as were enumerated in the Smith Act (U. S. Code, tit. 18, § 2385) and that the two were in conflict, but the clearly expressed basis of the court’s decision that Congress had intended to usurp the field and had in fact done so were the two findings:
1. That the Federal act touched a field in which the Federal interest — the control of subversion — was so dominant that the Federal statute' must be assumed to preclude enforcement of any State law on the subject;
2. That the Federal regulatory scheme was so complete, so elaborate and so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Thus the court concluded that Congress had treated seditious conduct as a matter of vital national concern and it could in no sense be considered a local enforcement problem. Finally, the court declared that the State of Pennsylvania was not stripped of its means of self-defense through the entry of the Federal Government into the field, since there were many valid laws on Pennsylvania’s books adequate for coping effectively with actual or threatened internal civil disturbances,
*705 Unhappily, the Town of Hempstead has no such means of self-defense. The practical effect of striking down the Hemp-stead ordinance would be to open the way to dangerous and unbridled conduct on the waters of the town.
The presumption of constitutionality of a law duly enacted is well established. Furthermore, the situation here presented is fundamentally different from that which pertained in Pennsylvania v. Nelson. While it is true, as the defendant asserts, that the Federal Government has an interest in the field of navigation (just as it has an interest in other areas over which the nation and the States have been held to possess concurrent jurisdiction), in the field of navigation, the Federal interest is not so dominant, and the problems involved are not so completely national in character, as to make any or all local regulation unthinkable where the Federal Government has acted. On the contrary, dissimilar conditions in different parts of the country require that special consideration and handling that only a decentralized treatment can afford. Furthermore, the Federal regulatory scheme established in the Motor Boat Act of 1940 is not so complete as to make reasonable the inference that Congress left no room for the States to supplement it.
Therefore, the court holds that not only is section 10 of the town ordinance valid but that section 9 is also valid. Accordingly, the motion of the defendant to dismiss the informations is denied.