JAMES BABLITCH, District Attorney Rock County
You have requested my opinion whether Wisconsin law permits a church to use a local cable television facility to broadcast a bingo *Page 81 
program involving viewer participation. In the situation you have described the local television outlet will provide the studio and technical people necessary to air the program. Bingo cards, good for the entire show, will be distributed through cooperating local merchants at a cost of $1.00 each. On October 20, 1971, my predecessor responded to a question from your predecessor relating to bingo programs aired on cable T.V. (60 OAG 382) That opinion, although somewhat dated, should be read in conjunction with this one.
Until 1973, bingo was a lottery forbidden by secs. 945.02 and945.03 (4), Stats. In 1973, Art. IV, sec. 24 of the Wisconsin Constitution was amended in the following manner:
 "The legislature shall never authorize any lottery, or grant any divorce, but may authorize bingo games licensed by the state, and operated by religious, charitable, service, fraternal or veterans' organizations or those to which contributions are deductible for federal or state income tax purposes. All profits must inure to the licensed organization and no salaries, fees or profits shall be paid to any other organization or person . . . ."
The legislature subsequently amended sec. 945.01 (2), Stats., by adding the following sentence:
 "(2) (am) `Lottery' does not include bingo as defined in s. 163.03 (1) if it is conducted pursuant to ch. 163."
Chapter 163, the Bingo Control Act, was enacted to implement the constitutional amendment. The basic goals stated in sec. 163.02, Stats., are: 1) close control over all phases of the conduct of bingo, 2) discouragement of commercialization, and 3) fostering of the lawful purposes for which bingo profits may be used by prevention of commercial gambling and criminal participation.
Specific provisions of ch. 163 encourage and enforce these policies. For example, under sec. 163.51 (2), Stats., bingo may be played only on premises which are owned by an organization licensed to conduct bingo, are publicly owned, are owned by another licensed organization, or are used regularly by the licensed organization for a purpose other than bingo, except that a rented, *Page 82 
borrowed, or donated tent may be used at a limited period bingo occasion. Under sec. 163.51 (4), Stats., each player who purchases a regular bingo card is entitled "to a place with sufficient room in which to play." Section 163.51 (21), Stats., provides in part that ". . . at any time during the bingo occasion, a card may be changed at no additional cost. Cards shall be sold or rented only on the premises at which bingo is being conducted . . . ."
I conclude that televised bingo conflicts directly with each of the above mentioned provisions. Televised bingo would be "played" in the television studio and in the homes of viewers and other places not falling into the categories of premises on which bingo may lawfully be played. Moreover, the requirement for sufficient room in which to play is not easily reconciled with a television game situation. Finally, distribution of cards through commercial outlets is clearly foreclosed by sec. 163.51 (21). It is difficult to envision any distribution scheme for cards which would permit a viewer to change his card while a televised broadcast of the bingo occasion was in progress.
Certain other provisions of ch. 163 strongly suggest that the legislature, in enacting the statutes relating to bingo in Wisconsin, intended to permit only bingo occasions taking place at a single location. For example, sec. 163.14 (5), Stats., requires the premises on which bingo occasions are conducted to be adequate and suitable for bingo, and to be owned by the applicant, another licensed organization, or the public, or used by the applicant on a regular basis for purposes other than bingo. Further, sec. 163.51 (22), Stats., provides that when more than one room is used for any one bingo game, the caller shall be in the room where the greatest number of players is present and shall announce the numbers in a manner clearly audible to players in each room. Both these provisions are clearly inconsistent with the conduct of bingo at such diverse locations as television studios and homes of viewers. In addition, sec. 163.51 (13), Stats., requires players to be above the age of 18. Section 163.51 (16), Stats., requires winners to be determined and prizes awarded on the same day the bingo occasion is conducted. These last two provisions would be unenforceable if home participation in televised bingo games were to be permitted.
Consequently, I conclude that bingo programs involving viewer participation and broadcast over local cable television facilities are *Page 83 
not conducted pursuant to ch. 163 of the statutes. To the extent that such a program violates ch. 163 it is not constitutionally protected. Therefore, such bingo games would constitute a lottery in violation of sec. 945.02 (3) and 945.03 (4), Stats. Alternatively, a violation of ch. 163 could be prosecuted under sec. 163.54
In 60 OAG 382 my predecessor expressed some reservations concerning possible federal preemption in this area. Specifically, that opinion raised the question whether a state prosecution would be prevented because of superseding federal regulations. It was concluded that such a determination must be made on a case-by-case basis.
In order to determine whether a state prosecution is foreclosed by federal regulation, an analysis of the applicable federal regulations and state laws is required. The fact that the illegal act is broadcast pursuant to federal regulations permitting such broadcasts does not necessarily preclude state action against the organization conducting the event.
The Federal Communications Commission (FCC) has regulatory jurisdiction over "cable television." United States v.Southwestern Cable Company (1968), 352 U.S. 157, 88 S.Ct. 1994,20 L.Ed.2d 1001. 18 U.S.C. sec. 1304 and FCC Rules 47 C.F.R., sec. 76.213 (1974), prohibit the transmission by cable channels of lottery information whether or not the lotteries are legal under state law. Wisconsin state lottery laws make lotteries illegal whether or not they are conducted on the airways. While it is true that a state cannot, in exercising its police powers, undertake what amounts to imposing a direct burden upon interstate commerce, local police regulations related to suitable protection of the people of the state and reasonable in their requirements are not invalid because they would incidentally affect interstate commerce. However, such legislation may not conflict directly with legislation enacted by Congress pursuant to its constitutional authority. Savage v. Jones (1911), 225 U.S. 501,32 S.Ct. 715, 56 L.Ed. 1182.
State statutes affecting interstate commerce are generally valid when they effectuate a legitimate public interest with only incidental effects on interstate commerce. only where the burden on such commerce is clearly excessive in relation to the putative *Page 84 
local benefits is the validity of the statute called into question. The matter is always one of degree and the extent of the permissible burden depends on the nature of the local interest involved and whether it could be promoted as well with a lesser impact on interstate activities. Pike v. Bruce Church,Inc. (1970), 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174.
In this instance it appears that Congress, by regulating the broadcasting of promotional information on lotteries, has circumscribed its regulation under the Commerce Clause and thereby left part of the area open to state regulation provided that the legislation is not inconsistent with federal legislation. A number of cases have held that a federal statute which neither forbids, nor legalizes and approves, certain conduct does not preclude exercise of state police power over subjects normally within such power and also reachable by federal regulation. Gilvary v. Cuyahoga Valley R. Co. (1934), 292 U.S. 57,54 S.Ct. 573, 78 L.Ed. 1123; Kelly v. State of Washington exrel. Foss Co. (1937), 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3.International Union, U.A.W. v. Wisconsin Employment RelationsBoard (1948), 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651.
The United States Supreme Court faced the issue of FCC authority over CATV and affirmed without opinion a district court opinion in T. V. Pix, Inc. v. Taylor (D.C. Nev., 1968),304 F. Supp. 459, aff'd w/o op. 396 U.S. 556, 90 S.Ct. 749,24 L.Ed.2d 746. In that case, the three-judge district court held that Nevada statutes attempting to regulate CATV within the state as a public utility were not unconstitutional under the Commerce Clause. The court reasoned that the power of the FCC in this area remained dormant and unexercised. While recognizing that CATV is an integral part of interstate commerce, the court emphasized the essentially local character of the community antenna system. The court stated that:
 "Appropriate state regulation of such primarily local facilities or services in interest [sic] commerce in the absence of federal legislative intervention, is not proscribed by the commerce clause of the Constitution." 304 F. Supp. at 463.
Furthermore, I have not found any direct evidence that Congress in enacting 18 U.S.C. sec. 1304 intended to supplant state regulation of television lotteries. In fact, the opposite conclusion is suggested by 18 U.S.C. sec. 3231, which provides in part: *Page 85 
 "Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof."
Consequently, it appears that the state statute and the federal regulations stand in harmony and that there is no actual conflict. In addition, there is no evidence of a congressional intent to preempt the field. I therefore conclude that the parties conducting cable television bingo in contravention of Wisconsin law may be prosecuted for such violations. Parties defendant in such a prosecution would include both the sponsoring organization and the cable TV station itself. To the extent that 60 OAG 382 would suggest preemption in a case such as the one you pose that opinion is modified.
BCL:FJE