# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2295

_____

| | | |
|---|---|---|
| Mary E. Cearley, Individually and as Administratrix of the Estate of Jimmy C. Cearley; Cynthia Jean Cearley Pritchett; Edward Wayne Cearley; Richard C. Cearley; Barbara Hill, | * * * * * * | |
| Plaintiffs-Appellees, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Arkansas |
| General American Transportation Corporation; Missouri Pacific Railroad Company, doing business as Union Pacific Railroad Company, | * * * * * | |
| Defendants-Appellants. | * | |

_____

Submitted: November 19, 1998

Filed: July 27, 1999

_____

Before McMILLIAN, WOLLMAN[1] and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

_____

[1]The Honorable Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

Union Pacific Railroad Company (Union Pacific) and General American Transportation Corporation (GATC) (together appellants) appeal from an interlocutory order entered in the United States District Court for the Western District of Arkansas denying their motion for summary judgment in this wrongful death action brought by family members (appellees) of Jimmy C. Cearley (Cearley), who suffered a fatal fall from a railroad tank car. See Cearley v. General Am. Transp. Corp., No. 96-4044 (W.D. Ark. Jan. 9, 1998) (order) (hereinafter "slip op."). For reversal, appellants argue that the district court erred in holding that appellees' state law claims are not preempted by the Federal Safety Appliance Acts (FSAA), 49 U.S.C. § 20301 et seq., or the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 et seq.,[2] and related federal regulations. For the reasons stated below, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

## Jurisdiction

Jurisdiction was proper in the district court under 28 U.S.C. § 1332. Jurisdiction is proper in this court under 28 U.S.C. § 1292(b).

## Background

The essential background facts are undisputed. On December 15, 1993, Cearley and his co-worker, James Dodson, were unloading bromine from a tractor trailer onto a railroad tank car that was parked on railroad tracks running through the premises of their employer, Great Lakes Chemical Company, in El Dorado, Arkansas. The tank car, classified as a "tank car without underframe," had been manufactured by GATC and had been brought to El Dorado by Union Pacific. Dodson left the scene for about ten minutes. When he returned, he found Cearley lying dead next to the tank car.

[2]The FRSA was originally codified at 45 U.S.C. § 421 et seq. In 1994, Congress recodified the FRSA at 49 U.S.C. § 20101 et seq.

There were no witnesses to the accident, but it is assumed for purposes of these proceedings that Cearley died from injuries sustained from falling off a fixed platform atop the tank car, approximately twelve feet above ground level.  Upon inspection, the tank car showed no signs that any railings were missing or damaged.  The platform has a railing around it which is thirty inches tall.

Appellees filed this action in federal district court, asserting state common law claims against appellants, primarily on the ground that the railing on the tank car platform was not high enough to provide adequate protection.  Appellees asserted, among other claims, a claim of negligence *per se* on the ground that the 30-inch height of the railing failed to comply with 29 C.F.R. § 1910.23,[3] a federal regulation promulgated by the Occupational Safety and Health Administration (OSHA), under the Secretary of Labor's authority pursuant to the Occupational Safety and Health Act.

Appellants moved for summary judgment on the ground that appellees' claims are preempted by the FSAA, the FRSA, and related regulations.  Upon review, the district court held that appellees' claims are not preempted and denied appellants' motion for summary judgment.  Recognizing that appellants' motion for summary

---

[3]29 C.F.R. § 1910.23 provides in relevant part:

(c) *Protection of open-sided floors, platforms, and runways.*  (1) Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing . . . on all open sides except where there is entrance to a ramp, stairway or fixed ladder.

. . . .

(e) *Railing, toe boards, and cover specifications.*  (1) A standard railing shall consist of top rail, intermediate rail, and posts, and shall have a vertical height of 42 inches nominal from upper surface of top rail to floor, platform, runway, or ramp level.

judgment involved controlling questions of law, as to which there are substantial grounds for differing opinions, and that an immediate appeal could materially advance the ultimate termination of this litigation, the district court certified the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Permission to proceed with this interlocutory appeal was then granted by our court.

## Discussion

We review a denial of summary judgment *de novo*. See Harder v. Acands, 1999 WL 373539, at *1 (8th Cir. June 9, 1999). The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Appellants argue, among other things, that appellees' state law claims are preempted by regulations related to railroad safety promulgated by the Federal Railroad Administration (FRA) under the authority of the Secretary of Transportation. Upon careful review of the pertinent statutes, regulations, and case law, we agree.

In CSX Transp., Inc. v. Easterwood, 507 U.S. 658 (1993) (Easterwood), a widow of a truck driver who was killed when his vehicle was struck by a train at a grade crossing brought state common law claims alleging inadequate warnings at the grade crossing and excessive speed of the train. The Supreme Court held that certain federal regulations could preempt state tort law claims regarding grade crossings and train speed. See id. at 665-75. In discussing the principles that apply in determining the preemptive force of the FRA regulations at issue, the Supreme Court began by

discussing the regulatory framework established under the FRSA, which gives the Secretary of Transportation "broad powers to 'prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety.'" Id. at 662 (quoting former 45 U.S.C. § 431(a)).[4]  The Supreme Court went on to observe, as a general rule, that state law must yield to federal law where the state law "conflicts with, or frustrates" federal law.  Id. at 663 (citing U.S. Const. art. VI, cl. 2; Maryland v. Louisiana, 451 U.S. 725, 746 (1981)).  The Court then explained:

> In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.  Thus, pre-emption will not lie unless it is the clear and manifest purpose of Congress.  Evidence of pre-emptive purpose is sought in the text and structure of the statute at issue.  If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.

Id. at 663-64 (citations and internal quotation marks omitted).

At the time of Cearley's accident in 1993, the FRSA did contain an express preemption clause.  That clause, 45 U.S.C. § 434, provided in relevant part:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable.  *A State may adopt or continue in force any law, rule,*

---

[4]The FRSA, in its current codification, provides: "[t]he Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970."  49 U.S.C. § 20103.  The stated purpose of the FRSA  is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  Id. § 20101.

*regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.* A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434 (1993) (emphasis added) (recodified in 1994 at 49 U.S.C. § 20106).[5]

Focusing on the plain wording of § 434, "which necessarily contains the best evidence of Congress' pre-emptive intent," Easterwood, 507 U.S. at 664, we are

---

[5]The current version of this preemption clause is worded slightly differently, but is identical in substance. It provides:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order –

(1) is necessary to eliminate or reduce an essentially local safety hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106.

confronted with the issue of whether or not the Secretary of Transportation has adopted a rule, regulation, order, or standard "covering the subject matter" of appellees' claims. In Easterwood, the Supreme Court faced the same issue and provided the following guidance for interpreting § 434's phrase "covering the subject matter":

> To prevail on the claim that the regulations have pre-emptive effect, petitioner must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that pre-emption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law.

507 U.S. at 664 (emphasis added) (citations omitted). In the present case, appellees' claims are based upon state tort law regarding platform safety features, such as safety railings, on rolling tank cars. The question thus becomes whether or not a federal regulation "substantially subsumes" state tort law regarding platform safety features, including safety railings, on rolling tank cars. Appellants cite, as preempting this subject matter, an FRA regulation addressing safety features on "tank cars without underframes," which is the type of tank car from which Cearley fell. It provides in relevant part:

> § 231.21**Tank cars without underframes**.
>     . . . .
>    (j) *Operating platform, ladder and safety railing* – (1) *Number.* One operating platform, two ladders and safety railing. Not required if all fittings used in the loading and unloading of the tank car are accessible from ground or end platform.
>    (2) *Dimensions*.
>        . . . .
>     (vi)  Operating platform, minimum width, seven inches; minimum thickness, one and three-quarters inches.
>    (vii) Safety railing, one and one-quarter inch wrought iron or steel pipe.

(3) *Location.* (i) Operating platform to be of sufficient length to provide access to all operating fittings. Ladder to be located on sides of car at center.

(ii) The safety railing shall enclose the operating platform, manway and fittings used in the loading and unloading of the tank. Railing shall be open only at the ladders where it shall extend in a vertical direction down to, and be securely attached to the platform. Maximum width of opening, twenty-four inches.

(4) *Manner of application.* (i) The ladders shall be securely fastened to the operating platform. The lower portion of ladder shall be braced in such a manner as to prevent any movement.

(ii) The operating platforms shall be supported to prevent sagging and be securely attached to the tank.

(iii) The safety railing shall be securely attached to four stanchions or corner posts, which shall be securely attached to the tank or operating platform.

49 C.F.R. § 231.21(j) (1993).

According to 49 C.F.R. § 231.21(j), a platform, two ladders, and a safety railing are all required features of this type of tank car unless all fittings used in loading or unloading are accessible from the ground or an end platform. The regulation also imposes specific requirements for the placement, design, and construction of the platform, ladders, and safety railing. In particular, the platform safety railing must be made of one and one-quarter inch wrought iron or steel pipe; it must fully enclose the platform, manway, and fittings used in loading and reloading; it must be open only at the ladder and open no more than twenty-four inches; and it must be securely attached at four points. Thus, notwithstanding the absence of a minimum height requirement for the platform safety railing, we conclude that 49 C.F.R. § 231.21(j) substantially subsumes the subject matter of state tort law regarding platform safety features on tank cars without underframes. The FRA regulation therefore precludes additional state regulation of the same subject matter. Cf. Easterwood, 507 U.S. at 674 ("Understood

in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort that respondent seeks to impose on petitioner.").

Appellees argue, however, that the district court correctly rejected the preemption argument because appellees are seeking, through their state law claims, to enforce a uniform federal OSHA regulation, 29 C.F.R. § 1910.23.  We disagree.

The Occupational Safety and Health Act provides, in relevant part, that "[n]othing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health."  29 U.S.C. § 653(b)(1).  Section 653(b)(1) and the FRSA's preemption clause, 49 U.S.C. § 20106 (formerly 45 U.S.C. § 434), complement each other, just as Congress intended.[6]  As noted above, 45 U.S.C. § 434 (the FRSA preemption clause in effect at the time of Cearley's accident) provided that "[a] State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement."  Section 653(b)(1) has the same effect: OSHA occupational safety regulations may fill the gaps of FRA safety regulations – for example, through a state law cause of action for negligence *per se* – if, and only if, the FRA has not exercised its statutory authority to prescribe or enforce standards or regulations affecting the relevant area of occupational safety or health.

Appellees further argue that their claim based on OSHA regulation 29 C.F.R. § 1910.23 is not preempted by FRA regulations in light of an FRA policy statement

---

[6]See, e.g., 49 U.S.C. § 20149 (requiring the Secretary of Transportation to coordinate railroad safety efforts with the Secretary of Labor).

issued on March 14, 1978. That FRA policy statement, addressing the interplay of FRA and OSHA regulations, includes the following language:

WALKING-WORKING SURFACES (SUBPART D)

OSHA regulations concerning working surfaces deal with such matters as ladders, stairway, platforms, scaffolds and floor openings. Generally, these regulations are applicable in railroad offices, shops and other fixed work places. There are three principal exceptions to the rule. First, they would not apply with respect to the design of locomotives and other rolling equipment used on a railroad, since working conditions related to such surfaces are regulated by FRA as major aspects of railroad operations.

. . . .

POWERED PLATFORMS, MANLIFTS, AND
VEHICLE-MOUNTED WORK PLATFORMS (SUBPART F)

OSHA regulations apply according to their terms to the railroad industry. *A work platform would be regulated by OSHA, even if mounted on an on-track vehicle.* It should be noted the OSHA regulation does not apply to the vehicle on which such a platform is mounted. See 29 C.F.R. § 1910.67(b)(3).

43 Fed. Reg. 10583, 10587-88 (1978) (emphasis added).

The district court relied on the above-quoted language referring to "powered platforms, manlifts, and vehicle-mounted work platforms," to conclude that appellees' claims in the present case are not preempted by FRA regulations. See slip op. at 4 ("[A]ccording to the 1978 policy statement upon which the defendants rely, OSHA regulations regarding the platform railings are not preempted. The only preempted regulations would be those addressing the tank car's design."). Upon review, we hold

-10-

that the district court erred in concluding that this language refers to the type of platform at issue in the present case – an error which apparently resulted from the district court's failure to review the FRA regulation specifically cited by the FRA in the 1978 policy statement.

The platform from which Cearley is believed to have fallen is a fixed and stationary platform on top of the tank car. See Appellants' Appendix at 36-46 (Affidavit of Trocky Ibert and attached photographs). It clearly is not a "powered platform" or "manlift." The only question remaining is whether it is a "vehicle-mounted work platform," within the FRA's intended meaning. The regulation which is specifically cited in the 1978 policy statement in this context is entitled "Vehicle-mounted *elevating and rotating* work platforms." 29 C.F.R. § 1910.67 (emphasis added). The term "platform," moreover, is defined in § 1910.67 as "[a]ny personnel-carrying device (basket or bucket) which is a component of an aerial device." Id. § 1910.67(a)(7). It is beyond genuine dispute that the platform from which Cearley presumably fell is not a "personnel-carrying device (basket or bucket) which is a component of an aerial device." Therefore, contrary to the district court's rationale, the platform in question is not the type of "vehicle-mounted work platform" to which the FRA was referring in its 1978 policy statement.

## Conclusion

For the reasons stated, we hold that appellees' state law claims, based upon the allegedly inadequate safety features of the tank car platform, including the safety railing, are preempted by federal law.[7] The order of the district court is reversed, and

---

[7]Because our decision is based upon the preemptive force of an FRA regulation authorized under the FRSA, we need not decide whether appellees' claims are also preempted by the FSAA. Compare, e.g., Gilvary v. Cuyahoga Valley Ry., 292 U.S. 57, 60-61 (1934) ("[s]o far as the safety equipment of such [railroad] vehicles is

the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

_____

concerned, [the FSAA] operate[s] to exclude state regulation whether consistent, complementary, additional, or otherwise"), with Garay v. Missouri Pac. R.R., 38 F. Supp. 892, 898 (D. Kan. 1999) ("the FSAA does not subsume the entire field of devices which could be deemed safety equipment, but only the subject of those devices which are listed in the statute").